## STATE FAIR OF TEXAS v. SEAY.

### No. 13434.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 23, 1936.

Rehearing Denied Nov. 20, 1936.

J. J. Eckford and Burgess, Chrestman & Brundidge, all of Dallas, for appellant.

Clark & Rice, W. D. White, and Russell V. Rogers, Jr., all of Dallas, for appellee.

BROWN, Justice.

Appellee, who was agent for several insurance companies in the spring of 1934, wrote and delivered to appellant a number of fire, windstorm, and plate glass insurance policies, the premiums charged therefor being a sum in excess of $2,506.58. The insured, State Fair of Texas, appellant here, caused all the policies to be canceled on September 24, 1934. When the several policies were canceled, appellant had paid nothing on the premium accounts, the policies having been delivered to it and it having been charged by the agent and various insurance companies for the full premiums.

The amount computed, as being the sum due by the insured for the protection accorded it, was the sum of $2,506.58, same having been computed on a "short rate basis." Demand having been made for the payment of such sum, and same having been refused by the insured, appellee brought suit against appellant in the district court of Dallas county to recover that portion of the premiums due on the policies which had been computed on the "short rate basis."

It appears that when the policies were canceled, appellant tendered appellee the sum of $1,599.32, which it claimed was the amount of the premiums due at the rates charged by appellee, calculated on the "pro rata basis"; and after suit was filed appellant kept this tender alive by specific averments in its answer; and, in addition thereto, pleaded that the rates charged for the windstorm policies were excessive and not in accordance with the manual rates, nor with the rates used by other companies in subsequently written policies, which latter rate, appellant alleged, was approved by the department of insurance as a proper rate.

Upon the trial, the district court sustained objections to appellant's testimony, by which it sought to show the rate which it contended should have been charged and which was being charged by companies that subsequently covered the risks, with the approval of the commission of insurance.

The trial court held that the "short rate" was applicable and overruled a motion by appellant that appellee take only the sum of $1,599.32, and sustained appellee's motion for a directed verdict against appellant for $2,506.58. It was agreed in open court that appellee was entitled to the sum of $1,599.-32, which had been tendered, and the directed verdict having been received, the trial court rendered judgment against appellant for the difference between $2,506.58 and $1,599.32, to wit, for the balance of $907.26.

This judgment was duly excepted to, the appeal perfected in the Court of Civil Appeals for the Fifth Supreme Judicial District, and the cause was, by the Supreme Court of this state, transferred to this Court of Civil Appeals.

All of the policies contained the following provision:

"This policy shall be cancelled at any time at the request of the Insured; or by the Company by giving five days' notice of such cancellation. If this policy shall be cancelled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate; except that when this policy is cancelled by this Company by giving notice, it shall retain only the pro rata premium."

The following contentions are made by appellant: (1) That the policies were canceled by the insured and surrendered before the premiums had been actually paid and therefore the provisions for retaining the "short rate" upon cancellation are not applicable, and appellee is entitled only to the "pro rata" premium; (2) that the insurance commission has no statutory authority to fix tornado and hail rates, and it was therefore error on the part of the trial court to sustain objections made to the evidence offered by appellant touching the correctness and reasonableness of the rates charged; (3) that appellant was not in fact attacking the rate fixed by the windstorm manual, which was approved by the insurance commission, but that it was only attacking the correctness of appellee's classification and measurements by which he arrived at conclusions as to the correct rate to be applied to the risks involved, and that the proffered testimony, tending to show that appellee had charged an excessive rate should, therefore, have been admitted in evidence.

Appellee contends that the issue of whether the premium charged should be on the "short rate basis" or on the "pro rata basis," as presented in appellant's brief, is the sole question for determination by this court. We believe that appellee is correct.

First, our conclusion is based upon the contention that appellant, by its answer, has admitted the correctness of the rates charged and has sought relief on the theory that it should be charged premiums computed on the "pro rata basis" instead of the "short rate basis," and that for the purpose of obtaining such advantage as may be had by a proper tender, it actually tendered, before suit was brought and after suit was brought, the sum of money which actually represents the amount of premiums actually charged, computed on a "pro rata basis."

█ There was no alternative plea filed by appellant. The legal effect of a tender, as stated by Jones on Evidence, page 441, is that the defendant conclusively admits being indebted in the amount tendered in full payment; that such sum is due for the cause mentioned in the pleading filed against him; that the plaintiff is entitled to claim it in the character in which he brings suit; that the court in which the cause is filed has jurisdiction of the subject-matter; that the contract described is correctly set forth and was executed by the defendant, and that it has been broken in the manner and to the extent alleged. The text uses the following language:

"In other words, the payment of money into court admits conclusively every fact which the plaintiff would be obliged to prove in order to recover that money."

█ We do not believe that the appellant can, under such circumstances as are described by his pleadings and tender, complain of the rates charged in the several insurance contracts.

It will be noted that the cancellation clause in the policies provides specifically that cancellation may be had at any time at the request of the insured, and that the company may bring about cancellation by giving five days' notice of such intention. The policy then specifically stipulates: "If this policy shall be cancelled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this Company retaining the customary short rate; except that when this policy is cancelled by this Company by giving notice, it shall retain only the pro rata premium."

█ It is our duty to ascertain the intent of the parties in using the language above quoted, and we shall attempt to do so, keeping in mind the duties devolving upon each of the contracting parties, the acts done by them, and the provisions of the contract. If appellant had actually paid into the hands of the appellee the premiums charged for such policies, having elected to cause same to be canceled before the expiration date of the contracts, the insurer could have retained the customary "short rate," and was under obligation to return to appellant the balance of the paid premium. It is undoubtedly true that if the premium had been paid into the hands of the insurers by appellant and the insurers had canceled the contracts, the insurers could have retained only the "pro rata" proportion of the premium. These provisions seem to provide for an equitable basis for adjusting the premiums when the contracts are canceled. In the first instance, when the contract is canceled by the insured, he is penalized by being charged a premium computed on a "short rate basis," which is decidedly higher than the premium charged on the "pro rata basis." He is penalized because he cancels a solemn contract which could not be canceled by him without a stipulation in the contract giving him the right to do so. In the second instance, the insurer is penalized for exercising such right of cancellation and is permitted to retain only a "pro rata" proportion of the premium, which is much less than the "short rate."

We do not believe that an insured who has "actually paid" the premium on his contract of insurance and who cancels his contract should be made to shoulder a more onerous burden than the insured who has, admittedly, not paid 1 cent of the premium and likewise has canceled his contract.

In the first instance, the insurer has had all the use and benefit of the insurance premium from the time it was paid until the insured brought about the cancellation of the contract; in the second instance, the insured has paid nothing on his premiums and the insurer has credited him therefor and has carried the contract and afforded the insured protection, up to the time of the cancellation by the insured.

The contract having stipulated positively that, the insured having brought about the cancellation, the insurer must return to the

insured all of the premiums actually paid, excepting therefrom the portion due the insurer, based on the "customary short rate," which the insurer is permitted to retain, we hold that the contract evidently implies an obligation upon the part of the insured to pay and the right of the insurer to collect a premium based upon the "short rate," in the event the insured has not actually paid the premium and brings about a cancellation of the contract.

To hold otherwise would be giving judicial sanction to a policy of penalizing the thrifty and diligent insurance contract holder and placing a premium upon such contracting party who obtains insurance protection on a credit basis.

So far as we are able to ascertain, this question has not been decided in Texas, and we are not unaware of the fact that herein we are pioneering.

We believe that the judgment of the trial court is equitable, just, and fair, and it is in all things affirmed.