**KEYSTONE OPERATING COMPANY,**
Appellant,

v.

**RUNGE INDEPENDENT SCHOOL DISTRICT et al., Appellees.**

No. 15712.

Court of Civil Appeals of Texas,
San Antonio.

Nov. 2, 1977.

Rehearing Denied Nov. 30, 1977.

Parker Ellzey, Alice, for appellant.

Robert L. Busselman, Kenedy, for appellees.

CADENA, Chief Justice.

Defendant, Keystone Operating Company, appeals from a judgment granting plaintiffs, Runge Independent School District, the State of Texas, and the County of Karnes, recovery for delinquent taxes assessed by the taxing agencies on defendant's real property for the years 1969, 1970, and 1971 and ordering foreclosure of the tax liens on such property. In addition, the judgment denied defendant's prayer that the taxing agencies by enjoined from attempting to collect the taxes for such years and that they be required to accept payment of such taxes based on a lawful evaluation of defendant's property for tax purposes. The judgment was rendered after a trial without the intervention of a jury.

Defendant's sole contention is that the mandate, embodied in Article 8, § 1 of the Texas Constitution, that all taxes be equal and uniform, was violated by the plan adopted by the taxing agencies in that defendant's oil and gas properties were assigned a value, for tax purposes, based on a higher percentage of their true value than that on which other real property was valued for tax purposes.

In this case, defendant did not seek equitable relief for the purpose of preventing the taxing authorities from placing into effect an illegal plan of taxation. Instead, it waited until the plan had been put into effect and sat idly by until the taxing agencies sought, by judicial proceedings, to collect the taxes which had been assessed and remained unpaid. The rule applicable in

such a situation has been stated in *Bass v. Aransas County Independent School District*, 389 S.W.2d 165, 170 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n. r. e.), as follows:

> Once [the tax] plan is put into effect, in the absence of showing, by comparison of the assessments against his property with assessments against other like property, of a gross discrimination against him, the land owner may defeat recovery of taxes only to the extent that they are excessive, and he must assume the burden of proving excessiveness. He must show that the use of such a plan worked to his substantial injury, and the extent of such injury.

The trial court found that the assessed values of defendant's properties did not exceed their actual cash market value; that defendant had not been substantially injured by the valuations placed on its properties; that the valuations were not grossly excessive; that there was no discrimination between the assessed value of defendant's oil and gas properties and other real property; and that defendant at no time tendered the amount which he thought to be the correct amount of taxes owed by him.

Defendant's 9 points of error are followed by a prayer that the judgment of the trial court be reversed and judgment be rendered by this court in favor of defendant. Throughout the argument accompanying each point we find statements that certain evidence favorable to defendant was uncontradicted. It is apparent that the points before us are to the effect that either there is no evidence to support the judgment below or that the evidence conclusively establishes that defendant is entitled to judgment.

■ The taxing agencies introduced into evidence the pertinent delinquent tax records and evidence to the effect that such taxes had not been paid. Under the provisions of Article 7326, Tex.Rev.Civ.Stat.Ann. (1960), the introduction of such evidence constitutes "prima facie evidence of the true and correct amount of taxes and costs due by" defendant.

■ At the very least, the statutory provision assigning prima facie value to the official tax records has the effect of casting upon the taxpayer the burden of producing evidence of the existence of recognized grounds for avoiding the tax. *State v. Whittenburg*, 153 Tex. 205, 265 S.W.2d 569, 572 (1954). The language of the cases indicates that the statutory provision goes further and places on the taxpayer the burden of persuading the trier of fact that the assessment is invalid. For example, the grounds on which a taxpayer may avoid payment of the tax are frequently referred to as "defenses." *Campbell v. City of Houston*, 464 S.W.2d 372, 374 (Tex.Civ.App.—Houston [14th Dist.] 1971, no writ); 3 Tex.Jur.2d *Taxation* § 174 (1974). In *Whelan v. State*, 155 Tex. 14, 282 S.W.2d 378, 385 (1955), the Supreme Court spoke of cancellation of taxes if the jury made findings showing the existence of facts establishing the "defenses" relied on by the taxpayer. *See* also *City of Waco v. Conlee Seed Co.*, 449 S.W.2d 29, 31 (Tex.1969).

■ The truth and the weight of the evidence offered by the defendant in this case . tending to meet and overcome the prima facie evidence offered by the taxing agencies were questions to be resolved by the trier of fact. The agencies were not bound by defendant's evidence and had the right to have a determination of the factual issue created by proof of the facts specified in the statute as constituting prima facie evidence. Stated differently, "prima facie evidence" is evidence upon which a finding may rest. It may be overcome by evidence to the contrary, but, in reaching a conclusion, the prima facie evidence is to be considered together with the evidence introduced in an effort to overcome it. The statute means that an inference may be drawn from the existence of certain facts. This inference may be drawn even though evidence indicating the non-existence of the inferred fact has been introduced. *Floeck v. State*, 34 Tex.Cr.R. 314, 30 S.W. 794, 798 (1895).

Only in extremely rare cases can it be said that the evidence establishes the value of property as a matter of law. In this case, the only testimony concerning the market value of defendant's properties came from defendant himself.

Defendant described the property involved in this case as consisting of the Robbins "A" lease, the Robbins "B" lease, the Wolters lease, and the Berkenhoff lease. He purchased the Robbins "A" and "B" leases together in 1966 for $5,650.00. The sale was by competitive bidding. In his opinion, the market value of the Robbins leases for the years 1969, 1970, and 1971 was the same as the price he paid in 1966. He testified that of the purchase price of $5,650.00, $3,766.67 represented the value of the Robbins "B" lease, while $1,883.33 represented the value of the Robbins "A" lease.

Defendant stated that he acquired the Wolters and Berkenhoff leases together in 1969 for a total purchase price of $29,747.00, and that, of this amount, $22,310.25 represented the value of the Wolters lease and $7,436.75 represented the value of the Berkenhoff lease.

 At best, the testimony of defendant concerning the market value of his property did no more than raise an issue of fact to be resolved by the fact finder, who is not bound by the opinions expressed. It cannot be said that such opinion testimony established the value of the property as a matter of law. *Board of Firemen's Relief & Retirement Fund Trustees of Houston v. Marks*, 150 Tex. 433, 242 S.W.2d 181, 183 (1951).

Nor does the testimony establish as a matter of law that the taxing agencies assessed defendant's property at a higher percentage of its market value than that at which other real property was assessed. Defendant introduced the deposition of the consultant who was retained by the agencies for the purpose of evaluating the properties in question and other mineral interests. His testimony concerning the percentage of value at which oil properties were assessed was qualified by expressions such as "I believe," "to the best of my recollection," and "I stand to be corrected." With specific reference to the school district, this witness stated that he "never got out of Runge [I.S.D.] what percentage they wanted or what they were assessing."

Such testimony falls short of establishing as a matter of law that the taxing agencies assessed oil properties at any specific percentage of market value.

As we view the evidence, it raised questions of fact which were resolved in favor of the taxing agencies.

The judgment of the trial court is affirmed.