**DUVAL COUNTY RANCH COMPANY and Clinton Manges, Appellant,**

v.

**STATE of Texas et al., Appellees.**

No. 16085.

Court of Civil Appeals of Texas, San Antonio.

July 11, 1979.

Rehearing Denied Sept. 5, 1979.

Jack L. Hart, Midland, for appellant.

G. Rudolph Garza, Jr., Corpus Christi, for appellees.

## OPINION

KLINGEMAN, Justice.

This is a delinquent tax suit.[1] The State of Texas, County of Duval, Duval County Vocational School District, and Duval County Conservation and Reclamation District, as plaintiffs, and Benavides Independent School District, and Freer Independent School District, as intervenors,[2] sued Duval County Ranch Company and Clinton Manges, as defendants, for personal judgment for the amount of tax indebtedness alleged to be due and for foreclosure on all the property involved, including surface lands and

1. The appeal before us is from a trial consolidation of four separate actions against defendants for delinquent taxes.

2. During the years for which the delinquent taxes are sought, portions of the Benavides Independent School District were to an extent taken over by, or included within the bounds of, the Freer Independent School District.

mineral and royalty interests.[3] Connecticut General Life Insurance Company and Bank of the Southwest, as lienholders, were made parties to the action by other pleadings. Duval County Ranch Company and Clinton Manges answered that the taxes sought to be collected were not legally listed, assessed, or levied, and that at the time of the suit Duval County Ranch Company did not own the minerals under the lands involved in the suit. Trial was to the court without a jury. The trial court held that Duval County Ranch Company was indebted for delinquent property taxes in the amount of $482,684.94, and that Clinton Manges was indebted for delinquent property taxes in the amount of $721,325.39. The trial court ordered a foreclosure of the tax lien on all the properties and a tax sale. The defendants have duly perfected their appeal. For the purpose of brevity three of the taxing agencies (the State of Texas, County of Duval, and Duval County Vocational School District) will at times hereinafter be referred to collectively as "Duval County." Benavides Independent School District and Freer Independent School District will be referred to as "School District," and Duval County Conservation and Reclamation District will be referred to as "Water District." Clinton Manges will be referred to as "Manges," and Duval County Ranch Company will be cited as "Ranch Company."

The trial court made extensive findings of fact and conclusions of law. Such findings accurately set forth much of the pertinent factual background and may be summarized as follows:

(a) The delinquent tax rolls of Duval County were offered and identified by Arnoldo Cuellar, County Tax Assessor-Collector, covering taxes collected by the Duval County taxing authorities. It was stipulated by all the parties that the delinquent tax rolls offered in evidence were properly authenticated and were the official delinquent tax records. Such tax records, the stipulation as to their authenticity, and various exhibits reflecting delinquent tax rolls for several years (commencing in 1971) were received in evidence, including the delinquent tax rolls with respect to the mineral interests;

(b) The Ranch Company introduced into evidence copies of the tax rolls and delinquent tax rolls, both as to the surface and oil and gas interests;

(c) The County Tax Assessor-Collector testified that delinquent taxes as shown upon the delinquent tax lists were unpaid;

(d) By agreement of the parties certified copies of the tax records of the Benavides Independent School District were received in evidence without requirement of further authentication, were identified by the school district's tax assessor-collector and were stipulated to be the "official Delinquent Tax Record of Benavides School District" and official tax rolls reflecting delinquent taxes as to the property involved. The school district tax assessor-collector testified that except for a partial payment which was reflected in intervenor's exhibits on taxes for the years 1973 and 1974, no other payments for taxes assessed against the property of the Ranch Company have been paid.

(e) The defendants introduced into evidence the purported minutes of the Commissioners Court of Duval County, which as offered and received do not reflect any action of the Commissioners Court regarding the levy of ad valorem taxes for the years 1971 through 1975. The minutes reflect that at a meeting on July 31, 1975, there was a motion that "a total rate of $2.20 be approved and adopted for the year 1976 [sic]. . . ." The minutes as introduced do not reflect any action of the Commissioners Court to levy ad valorem taxes in 1976. (Except to the extent that the exhibit speaks for itself, the trial court was unable to find as a fact that this exhibit reflects whether there were other meetings and/or actions

---

3. The Duval County Ranch Company, a Texas corporation, consists of approximately 75,000 acres of land in Duval and Webb Counties, owned in fee. In February, 1974, the Duval County Ranch Company gave a deed to the mineral interest to Clinton Manges.

by the Commissioners Court not shown by these minutes.) Neither party offered the testimony of any member of the Commissioners Court, County Clerk, or any other person with knowledge of the facts in connection with the listing, assessing and levying of the taxes in question.

(f) Minutes of a meeting of the Directors of the Water District for the period prior to July 10, 1972, had "disappeared." The defendants introduced the subsequent minutes of meetings of the Water District. The minutes do not reflect any action of the Board of Directors as to the levy of ad valorem taxes for the years 1971, 1972, 1973 and 1974. A motion was made at a meeting on July 29, 1976, according to these minutes, to set the ad valorem tax rate for the Water District. (Except to the extent that this exhibit speaks for itself, and aside from the statutory presumption and prima facie case created by introduction into evidence of the delinquent tax records, the trial court was unable to find as a fact whether the Directors of the Water District did or did not act during the years in question to levy the taxes.)

(g) There was testimony that all minutes of the meetings of the Board of Trustees of the Benavides Independent School District were "missing" for all times prior to January 7, 1974. Subsequent minutes of the school district were introduced by defendants. The minutes offered by defendant do not reflect any action to levy ad valorem taxes for the year 1974. There was a "motion" to levy ad valorem taxes for the year 1975 in the minutes dated August 14, 1975. No further evidence was offered by any party as to other minutes or to other action that may have been taken by the Board of Trustees of the school district in connection with the listing, assessing and levying taxes, except that the tax assessor-collector for the school district testified that tax rates were set for each year and in general testified as to action of the Board of Trustees levying taxes. (These exhibits were received with no assurance by any party that they constituted all of the minutes for the school district meetings for the period purported to be covered, and therefore, aside from the statutory presumption and prima facie case created by introduction into evidence of the delinquent tax records, the trial court was unable to find as a fact whether the Board of Trustees of the school district did or did not levy the taxes for the years in question.)

(h) Over objection, the intervenors introduced into evidence the budgets of the Benavides Independent School District as submitted to the Texas Education Agency [regarding] levies and tax rates. Some evidence as to a Board of Equalization hearing in 1975 was also offered.

(i) Secondary evidence tending to indicate tax levies by the plaintiffs for the several years were received over objection, namely, the stipulated testimony of the County Auditor, as to tax rates being set for the years in question and County budgets as filed with the State Comptroller, alluding to the several tax rates.

(j) The defendants offered into evidence a tax certificate from the Benavides Independent School District reflecting payment of all taxes through the year 1974, but withdrew such exhibits after evidence was offered that such certificate was fraudulent; that the Ranch Company had paid less than twenty-five per cent of the taxes owing; and that a false tax certificate has been issued by Tax Assessor-Collector Rodolfo Couling on the orders of George Parr.[4]

Other findings of fact made by the trial court are restated, as follows:

(1) The Delinquent Tax Rolls of Duval County received in evidence under a stipulation of all parties that they were the official Delinquent Tax Rolls for such

---

**4.** There is evidence in the record that some officials of the Ranch Company were on some of the boards of the various tax authorities involved in this case; Rodolfo Couling, a for-mer tax assessor-collector for the Benavides Independent School District, testified in some detail regarding questionable procedures in his office.

County are sufficient to and do constitute the list of lands and lots and/or property on which taxes . . . are delinquent within the purview of Article 7336 V.A.C.S. and Article 7326 V.A.C.S. Such Delinquent Tax Rolls also substantially comply with the requirements of Article 7321 V.A.C.S.

(2) Defendant [Duval County] Ranch [Company's] Exhibits 9 through 12 were the Delinquent Tax Records submitted by Duval County to the State Comptroller in accordance with Article 7321 V.A.C.S.

(3) The Delinquent Tax Records of the Benavides Independent School District received in evidence under a stipulation of all parties that they were the official tax records of such School District are sufficient and do constitute the records constituting the prima facie evidence under Article 7336 V.A.C.S., 7326 V.A.C.S. (by virtue of Article 7343 V.A.C.S.).

(4) The Delinquent Tax Lists of the Duval County Conservation & Reclamation District received under the stipulation of the parties as to their authenticity, were sufficient to and did constitute the records constituting prima facie evidence under Article 7326 & 7336 V.A.C.S.

(5) Except for the partial payment of approximately $30,000.00 by the Duval County Ranch Co., Inc., on February 12, 1975, to the Benavides Independent School District in connection with the issuance of the false Tax Certificate and the credits reflected on the Delinquent Tax Lists of the Plaintiff, none of the taxes in question, penalty, or interest have been paid.

(6) The defensive evidence offered by Defendants was insufficient to prevail as against the presumptions and the prima facie provisions of Article 7326 and 7336 V.A.C.S.

(7) All the taxes in question were assessed against the Duval County Ranch Co., Inc.

(8) Clinton Manges was conveyed a severed interest in oil, gas and minerals by the Ranch Company February 1, 1974.

The trial court also made conclusions of law, which are set forth as follows:

(1) By virtue of Article 7336 V.A.C.S. the Delinquent Tax Lists of Duval County in evidence constituted prima facie evidence that all the requirements of law were complied with as to the regularity of listing, assessing and levying all taxes. By virtue of Article 7326 V.A.C.S. such Delinquent Tax Records constituted prima facie evidence of the true and correct amount of taxes and costs due from the Defendant Ranch Company. Under Article 7321 V.A.C.S. there was also prima facie evidence that all requirements of law had been complied with by Plaintiffs. Accordingly, the Plaintiff Duval County and those taxing agencies for which it is the Tax Assessor-Collector are entitled to recover as against the Duval County Ranch Co. for an [sic] in the amounts shown by the Delinquent Tax Lists.

(2) Defendant Ranch Co., Inc. is bound by its Exhibits 9 through 12 which were the Delinquent Tax Records submitted to the State Comptroller in accordance with [Article] 7321 and Defendant's own Exhibits constituted prima facie evidence that all of the requirements had been complied with in the regularity of listing, assessing and levying the taxes in question of the Plaintiffs.

(3) By virtue of Article 7336 V.A.C.S. the Delinquent Tax Lists of the Benavides Independent School District in evidence constituted prima facie evidence that all the requirements of law were complied with as to the regularity of listing, assessing and levying all taxes. By virtue of Article 7326 V.A.C.S. such Delinquent Tax Records constituted prima facie evidence of the true and correct amount of taxes and costs due from the Defendant Ranch Company. Under Article 7321 V.A.C.S. there was also prima facie evidence that all requirements of law had been complied with by Plaintiffs. Accordingly, the Plaintiff Benavides Independent School District and those taxing agencies for which it is the Tax Assessor-Collector are entitled to recover as against the Duval County Ranch Co. for

and in the amounts shown by the Delinquent Tax Lists.

(4) By virtue of Article 7336 V.A.C.S. the Delinquent Tax Lists of the Duval County Conservation & Reclamation District in evidence constituted prima facie evidence that all the requirements of law were complied with as to the regularity of listing, assessing and levying all taxes. By virtue of Article 7326 V.A.C.S. such Delinquent Tax Records constituted prima facie evidence of the true and correct amount of taxes and costs due from the Defendant Ranch Company. Under Article 7321 V.A.C.S. there was also prima facie evidence that all requirements of law had been complied with by Plaintiffs. Accordingly, the Plaintiff Duval County Conservation & Reclamation District and those taxing agencies for which it is the Tax Assessor-Collector are entitled to recover as against the Duval County Ranch Co. for and in the amounts shown by the Delinquent Tax Lists.

(5) Defendant Clinton Manges took conveyance of the mineral interest with the taxes delinquent thereon February 1, 1974. Plaintiffs and Intervenor are entitled to recover as against Clinton Manges with an Order of Sale as to the delinquent taxes shown upon their Delinquent Tax Lists on the oil and gas in place.

(6) The Plaintiffs and Intervenor are entitled to judgment and relief as set out in the Judgment heretofore signed by the Court.

Defendants assert twenty-eight points of error in which they complain that (1) the trial court erroneously held that the defensive evidence was insufficient to prevail as against the presumptions and prima facie provisions of Articles 7326 and 7336, Texas Revised Civil Statutes; (2) the evidence supporting the trial court's findings as to the regularity of listing, assessing and levying was either legally or factually insuffi-

cient; (3) there was double assessment and taxation of the subject mineral interest; (4) the trial court erred in decreeing a foreclosure of a lien against the real estate and mineral properties involved in bulk, or in groups of more than one tract, because such a foreclosure is contrary to law; and (5) the trial court incorrectly held that the lienholders, Connecticut General Life Insurance Company and Bank of the Southwest, were duly served with process, and in holding that a lien exists against the real estate and mineral interests involved superior to all other liens, charges and encumbrances of any character.

### Statutory Presumptions

The procedural posture of the taxpayer who challenges a property taxation scheme is vital in determining what he must do in order to prevail. Typically, he only has three alternatives. First, he may bring an action to enjoin the collection of taxes before the taxing jurisdiction has formally approved the tax rolls and begun the actual process of collecting taxes. Second, he may seek an injunction after the tax rolls have been approved and the collection process has begun. Third, he may allow a taxing scheme to go into effect and then challenge the assessment as a defense to a suit brought by the taxing unit for delinquent taxes. Here, the taxpayers chose the third alternative and as a result assumed a much more onerous burden. Defenses in a suit brought by taxing agencies for delinquent taxes are limited.[5] One taxing authority has stated that if a taxpayer delays his challenge until the board of equalization has approved the tax roll and the process of tax collecting has begun, his challenge has only a slim chance of success. In a delinquent tax suit the taxpayer labors under a heavy burden of proof due to failure to litigate his objections sooner. *See* Yudof, *The Property Tax in Texas Under State*

---

5. Article 7329 [Defense to tax suits] provides:

There shall be no defense to a suit for collection of delinquent taxes, as provided for in this chapter except:

1. That the defendant was not the owner of the land at the time the suit was filed.

2. That the taxes sued for have been paid, or

3. That the taxes sued for are in excess of the limit allowed by law, but this defense shall apply only to such excess.

Tex.Rev.Civ.Stat.Ann. art. 7329 (Vernon 1960).

*and Federal Law*, 51 Texas L.Rev. 885 (1973).

Under the record before us, defendants at no time prior to the filing of this suit ever made any official objection to the listing, assessing and levying of any of the taxes here involved, nor did they bring any action seeking to stop or enjoin any of such tax proceedings. Instead, they made no challenge until each of the plaintiff taxing authorities sought by judicial proceedings to collect the taxes which had been assessed by each respective authority and which remained unpaid.

■ Numerous statutes provide that the taxing jurisdiction can establish a prima facie case for the tax claim by the introduction of its official tax record. By introducing into evidence delinquent tax rolls, the taxing entity makes out a prima facie case and is entitled to judgment in the absence of any proven defense in opposition thereto. In *Stratton v. Del Valle Independent School District*, 547 S.W.2d 727 (Tex.Civ.App.— Austin 1977, no writ), the Court stated that "[b]y the admission of the certified copy of appellee's delinquent tax record, a presumption was raised that there was a valid levy and assessment of the taxes in issue made by a legally constituted taxing authority and that all conditions precedent to such assessment and levy had been performed." *See Newton v. Highland Park Independent School District*, 361 S.W.2d 916 (Tex.Civ. App.—Austin 1962, no writ); *Whaley v. Nocona Independent School District*, 339 S.W.2d 265 (Tex.Civ.App.—Fort Worth 1960, writ ref'd).

■ In *Keystone Operating Co. v. Runge Independent School District*, 558 S.W.2d 82 (Tex.Civ.App.—San Antonio 1977, writ ref'd n. r. e.), this Court was confronted with a situation wherein the taxing agencies introduced into evidence the pertinent delinquent tax records and evidence to the effect that such taxes had not been paid. Under the provisions of Article 7326, we held that

the introduction of such evidence constitutes 'prima facie evidence of the true and correct amount of taxes and costs

due by' defendant. At the very least, the statutory provisions assigning prima facie value to the official tax records has the effect of casting upon the taxpayer the burden of producing evidence of the existence of recognized grounds for avoiding the tax. *State v. Whittenburg*, 153 Tex. 205, 265 S.W.2d 569, 572 (1954). The language of the cases indicates that the statutory provision goes further and places on the taxpayer the burden of persuading the trier of fact that the assessment is invalid.

*See also Kirkman v. City of Amarillo*, 508 S.W.2d 933 (Tex.Civ.App.—Amarillo 1974, writ ref'd n. r. e.); *Campbell v. City of Houston*, 464 S.W.2d 372 (Tex.Civ.App.— Houston [14th Dist.] 1971, no writ); *Stone v. City of Dallas*, 244 S.W.2d 937 (Tex.Civ. App.—Waco 1951, writ dism'd); *Adams v. Royse City*, 61 S.W.2d 853 (Tex.Civ.App.— Dallas 1933, writ ref'd); 21 J. Howell, Property Taxes §§ 391–411 (Texas Practice 1975). The truth and weight of the evidence offered by a defendant tending to meet and overcome the prima facie evidence offered by a taxing agency are questions to be resolved by the trier of fact.

A question presented in this appeal is whether the mere introduction into evidence of the taxing agency's silent minutes is sufficient positive evidence as a matter of law to rebut the statutory presumption in favor of a valid tax listing, assessment and levy. Defendants contend that the introduction of these minutes conclusively rebutted the prima facie proof and presumptions of Articles 7326 and 7336. We disagree.

It has previously been held that where an order of the Commissioners Court was never duly recorded in the minutes of the Court, one may prove by parol evidence that such order was in fact duly made and passed by said Court, over the objection of the opposing taxpayer that such an order can be shown only by the minutes thereof and that proof thereof cannot be made by parol. *Mecom v. Ford*, 113 Tex. 109, 252 S.W. 491 (1923).

■ This Court in *Keystone Operating Co. v. Runge Independent School District,* 558 S.W.2d 82 (Tex.Civ.App.—San Antonio 1977, writ ref'd n. r. e.), after thoroughly discussing the prima facie case established by the introduction of the taxing agency's delinquent tax rolls, stated that the burden of persuading the trier of the fact that the assessment is invalid is placed on the challenging taxpayer. "Prima facie evidence" is evidence upon which a finding may rest. Article 7326 permits an inference to be drawn from the existence of certain facts, and this inference may be drawn even though evidence indicating the non-existence of the inferred fact has been introduced.

■ Defensively, neither Manges nor the Ranch Company offered any testimony or explanation with respect to their non-payment of the taxes sought. We have concluded that the mere introduction of the silent minutes was not sufficient positive evidence to rebut the statutory presumptions created by Articles 7326 and 7336. Moreover, there was other evidence introduced before the trial court as to the regularity of the tax proceedings in question.

### Waiver and Estoppel

■ The evidence shows that on at least three occasions the Ranch Company made partial payment of taxes on the properties involved. Plaintiff asserts that by such partial payment defendants either waived any irregularities in the listing, assessing and levying of taxes, or that defendants are now estopped from attacking such listing, assessing and levying. Plaintiffs urge that a voluntary and unconditional tender of payment by defendant dispenses with the need for proof of facts that would otherwise be necessary in order for plaintiffs to recover upon their cause of action and that having made a tender of a part of the amount sued for, the defendant taxpayer is precluded from now denying the legality of all of it. *See Murchison v. Post Independent School District,* 258 S.W.2d 229 (Tex. Civ.App.—Amarillo 1953, writ ref'd n. r. e.); *Doneghy v. State,* 240 S.W.2d 331 (Tex.Civ.

App.—Amarillo 1951, no writ); *Bell v. Turkey Independent School District,* 214 S.W.2d 834 (Tex.Civ.App.—Amarillo 1948, writ ref'd n. r. e.); *State Fair of Texas v. Seay,* 98 S.W.2d 232 (Tex.Civ.App.—Fort Worth 1936, writ dism'd); *City of Rising Star v. Dill,* 259 S.W. 652 (Tex.Civ.App.—Fort Worth 1923) *aff'd,* 269 S.W. 769 (Tex. 1925). These cases stand for the general proposition that by tendering part of the taxes claimed the taxpayer admits the justness of the tax to the extent of the amount tendered and is estopped from disputing his liability to that extent. There is language in some of these decisions indicating that, since the same proceedings produced the amount of taxes tendered as partial payment by the taxpayer as well as the amount denied to be owing by him, this is tantamount to a waiver and estoppel as to all the taxes listed, assessed and levied in such proceeding. While we do not regard these cases alone as determinative of the case before us, these authorities provide an additional ground for upholding the judgment as to those portions of the delinquent taxes involved, and, particularly so, in view of the fact that the payments or tenders were unconditional and without limitation.

### Assessment of Mineral Interests

Defendants contend that in some instances there was double assessment of minerals for tax purposes; that Manges was not the owner of the minerals for some of the years in which the mineral taxes were adjudged against him; and that the Ranch Company did not own the minerals at the time the tax suits were instituted.

■ Under the record, we do not find any such double assessments on the subject mineral interests. It is a common practice when there has been a severance of the minerals, particularly where production is involved, to have separate tax assessments of the mineral estate and the surface estate. It is a well-recognized principle of law that after the mineral estate has been severed by the owner from the land, the same is assessed for taxes and the owner of the mineral estate is liable for taxes to the

same extent that property owners are liable for any other tax. *See Humble Oil & Refining Co. v. State*, 3 S.W.2d 559 (Tex.Civ. App.—Waco 1927, writ ref'd). It is undisputed that for the tax years 1971, 1972, 1973 and 1974, the Ranch Company was assessed as the owner of the surface lands involved and was at the same time assessed separately as to the oil, gas and mineral interest. There was a severance as to a portion of the minerals in 1965 as shown by a deed from the Ranch Company to Humble Oil & Refining Company, wherein Humble was conveyed a 30.93 per cent interest in certain minerals. An examination of the oil properties involved, as shown in the delinquent tax records, indicates percentage ownerships in the oil and gas properties, with each mineral interest being designated in percentage points. The records show that the Ranch Company was assessed a percentage ownership interest either as to royalty interest or as to other mineral interests. This is a proper method of assessment. There is no evidence that defendants ever questioned the separate valuation of the mineral interests or complained of any double taxation in advance of the original tax levy in the present action. There was an additional severance in 1974 when Clinton Manges was conveyed certain mineral interests by the Ranch Company. The trial court assessed taxes against Manges for the mineral interests involved for the years 1971 through 1976. Manges did not own these mineral interests until 1974 when he received a conveyance of such mineral interests from the Ranch Company. The trial court found that Manges assumed the taxes. Apparently on this basis, and on the additional fact that there were delinquent mineral taxes on such property at the time of such conveyance, the trial court rendered judgment against Manges for all of the years involved. The record contains a copy of the deed which provides only that Manges assumed the taxes for 1974 on the properties therein conveyed.

The taxes on the mineral interests for the years involved remain unpaid. They are either the responsibility of Clinton Manges or the Ranch Company, or both.

Under the circumstances, we have concluded that the portion of the judgment awarding plaintiffs and intervenors the sum of $721,325.39, assessed solely against Manges, should be reformed to provide that the judgment as to such amount is assessed against Clinton Manges and Duval County Ranch Company, Inc., jointly.

### Bulk Assessment

Defendants also complain that the trial court erred in decreeing a foreclosure of the tax lien against the real estate and mineral property in bulk, or in groups of more than one tract, because such a foreclosure is contrary to law.

The property here involved is comprised of approximately 75,000 acres of land, which has been owned in fee by the Ranch Company for many years and was so owned in 1971, the first year for which delinquent taxes were sought in the present tax suits.

Three tracts of property are involved in these suits. Tract One contains some 72 parcels totaling 49,715.97 acres; Tract Two contains some 40 parcels totaling 25,710.25 acres; and there are also some 172 separate oil and gas interests. Effective on February 1, 1974, the Ranch Company conveyed to Clinton Manges all of the oil, gas and mineral rights it owned in and under the ranch.

Judicial foreclosure of tax liens on real property is provided for in Article 7326. This statute sets forth in detail the provisions as to such foreclosure proceedings. It has been held that the lien provided for by Article VIII, Section 15, of the Texas Constitution (and the declaratory statute enacted pursuant thereto) attaches only to each separate tract of land for the taxes assessed against it. *Richey v. Moor*, 112 Tex. 493, 249 S.W. 172 (1923). If, however, the owner uses several tracts of land together or if he renders several tracts of land together, an *in solido* (or bulk) assessment is valid and the lien securing the tax extends over the entire parcel. *See Victory v. State*, 138 Tex. 285, 158 S.W.2d 760 (1942); 21 J. Howell, Property Taxes § 480

(Texas Practice 1975). If the consolidation of the tracts here involved constituted an erroneous assessment, that assessment was in effect validated by Article 7351, which has been held to validate an assessment wherein the assessor failed to give a separate value on each lot, block or tract of land, or stated in other terms, where the assessor made a "bulk assessment." *Stratton v. Del Valle Independent School District*, 547 S.W.2d 727 (Tex.Civ.App.—Austin 1977, no writ). Defendants' points of error complaining of the bulk assessment are overruled.[6]

### Lienholders

◼ By a number of points of error defendants complain that the trial court erred in holding that the lienholders were served with process and were properly before the court, and that the plaintiffs' and intervenors' tax liens were superior to all other liens, charges or encumbrances. It must be remembered that none of the lienholders perfected an appeal. Defendants in their brief acknowledge that both defendants were at one time served with process; that Connecticut General Life Insurance Company filed an original answer and that Bank of the Southwest also filed an original answer. The judgment recites that such lienholders were duly served with process and answered herein, but failed to appear on their behalf. In view of these findings, and the additional fact that neither of such lienholders has perfected an appeal, we do not deem it necessary to further discuss defendants' contentions in this regard. All of defendants' points of error pertaining to such lienholders are overruled.

We have concluded that (1) the trial court correctly held that the defenses and evidence offered by the defendants was insufficient to prevail as against the presumption and provisions of Articles 7326 and 7336; (2) there was legally and factually sufficient evidence to support the trial court's findings as to the regularity of the

listing, assessing and levying of taxes as to all taxing authorities involved; (3) the trial court correctly decreed a foreclosure against the real estate and mineral properties; and (4) the trial court correctly held that the lienholders were properly served with process and that the plaintiffs' and intervenors' tax liens were superior to all other liens, charges or encumbrances of any character. We have also concluded that the taxes for the mineral interests adjudged against Manges should be assessed jointly against Manges and Duval County Ranch Company, Inc.

All of defendants' points of error not herein specifically discussed have been considered, and all are overruled.

The judgment is reformed to provide that the portion of the judgment adjudging taxes against Clinton Manges in the sum of $721,325.39, which covers mineral taxes on the properties here involved, is changed so as to provide that such taxes are assessed jointly against Clinton Manges and Duval County Ranch Company, Inc. As reformed, the judgment is affirmed.

---

**6.** If the defendant shall, at any time before the sale, file with the officer in whose hands the order of sale shall be placed, a written request that the property be divided and sold in smaller tracts than the whole, together with a descrip-

tion of such smaller tracts, the request shall be granted and the officer shall sell only as many subdivisions as are necessary to satisfy the amount due. 21 J. Howell, Property Taxes § 493 (Texas Practice 1975).