**FIRST SOUTHERN TRUST COMPANY**
and First Southern Holding
Company, Appellants,

v.

S. Richard SZCZEPANIK, Ron E. Simmons, Guy M. Cooper, and Retirement Advisors of America, Inc., Appellees.

No. 05–92–02072–CV.

Court of Appeals of Texas,
Dallas.

Oct. 13, 1993.

Monte M. Bond, William N. Bret, III, Dallas, for appellant.

John A. Koepke, Thomas K. Boone, Dallas, for appellee.

Before KINKEADE, BURNETT and MORRIS, JJ.

## OPINION

KINKEADE, Justice.

First Southern Trust Company (FST) appeals a take nothing judgment entered in

favor of S. Richard Szczepanik, Ron E. Simmons, Guy M. Cooper, and Retirement Advisors of America, Inc. (RAAI) on its causes of action arising from the formation of RAAI, a company that competed with FST in the business of managing retirement funds. First Southern Holding Company (FSH) appeals a judgment for $97,803 entered in favor of Szczepanik on his cause of action to recover salary and reimbursement of expenses that he claimed were due and owing from the time he was president of FSH. In four points of error, FST contends that the trial court erred in (1) instructing a verdict and refusing to submit questions to the jury on its causes of action on the basis that there was no evidence of its lost profits, and (2) excluding its damage evidence and certain expert testimony as a discovery sanction. In one point of error, FSH contends that the trial court erred in refusing to submit a question to the jury on its defenses to Szczepanik's cause of action. Because the evidence raised a fact issue with respect to FST's lost profits, we reverse and remand in part.

### FACTUAL AND PROCEDURAL BACKGROUND

FST was a trust company formed in 1987 to manage retirement funds primarily for airline pilots. FST was wholly owned by FSH. Its chief executive officer was William Bret. In May 1990, a group of directors removed Bret as CEO of FST and made Szczepanik, who was already a director of FSH, president of FSH, giving him control of FST. In November 1990, Bret regained control of FST.

Subsequently, Szczepanik, along with Cooper and Simmons, who were officers of FST, resigned their positions with FST and FSH and formed RAAI, another trust company in the business of managing retirement funds. Several other FST employees also resigned to go to work for RAAI. RAAI began contacting FST's customers. In May 1991, FST began receiving requests from some of its customers to transfer their retirement accounts to RAAI. Approximately $40 million of FST's customer accounts were transferred to RAAI.

In March 1991, Szczepanik sued FSH to recover salary and reimbursement for certain expenses that he claimed were still due and owing from when he was president of FSH. FSH asserted the affirmative defenses of fraud, failure of consideration, and legal capacity to Szczepanik's cause of action. In that same action, FST brought causes of action against Szczepanik, Simmons, Cooper, and RAAI for (1) unfair competition, (2) misappropriation of trade secrets and corporate opportunity, (3) breach of contract, (4) breach of fiduciary duty, (5) tortious interference with contracts, (6) tortious interference with business relationships, (7) breach of the duty of good faith and fair dealing, (8) fraud, (9) slander, and (10) civil conspiracy. FST sought damages in the form of lost profits and an injunction prohibiting Szczepanik, Cooper, Simmons, and RAAI from soliciting, contacting, or otherwise communicating with FST's customers and from using FST's customer lists and information.

The trial court entered an order that Szczepanik's cause of action against FSH be tried separately from FST's causes of action. FSH stipulated to the amount owed to Szczepanik for his salary and reimbursement cause of action, subject to its defenses and counterclaims. The case proceeded to trial on FST's causes of action against Szczepanik, Simmons, Cooper, and RAAI.

At trial, FST presented the following evidence in support of its claim for lost profits:

1. FST was established in October 1987 and was making a profit as of May 1990.

2. In 1991, FST managed $350 million in assets consisting of customer retirement funds.

3. Beginning in 1991, FST expected a profit of $250,000 to $500,000 per year.

4. Estimates for 1991 showed an actual profit of $30,000 for FST and that figure took into account extraordinary legal expenses of some $140,000 plus "other items of like kind."

5. Since April 1991, approximately $40 million of FST's assets were transferred to RAAI.

6. FST charged its customers as a fee for its management services an average of one

percent per year on each account. After paying management fees, FST actually received approximately three-fourths of the yearly fee charged.

7. FST expected to manage its customers' accounts for life. Its customers' birth dates were available on the trust applications admitted into evidence at trial.

After FST rested, the trial court granted an instructed verdict in favor of Szczepanik, Cooper, Simmons, and RAAI on the following FST causes of action on the basis that there was no evidence of lost profits: (1) misappropriation of trade secrets regarding FST's prospective customer lists and marketing plan, (2) tortious interference with FST and its employees, (3) civil conspiracy between former FST directors and employees and RAAI, and (4) damages. The parties dismissed the fraud and slander causes of action by agreement. The trial court denied a motion for instructed verdict but refused to submit questions to the jury on the following FST causes of action on the basis that there was no evidence of lost profit damages that would allow FST recovery on these causes of action: (1) misappropriation of trade secrets regarding FST's customer lists, (2) tortious interference with FST and its customers, (3) conspiracy between Cooper, Simmons, and Szczepanik, (4) breach of fiduciary duty, and (5) proximate cause. The trial court also refused to submit a question to the jury on FSH's defenses to Szczepanik's cause of action against it. In its final judgment, the trial court (1) enjoined Cooper, Simmons, and RAAI from using or retaining FST's client lists, (2) entered a take nothing judgment on FST's causes of action for damages against Szczepanik, Simmons, Cooper, and RAAI, and (3) awarded Szczepanik $97,803 on his cause of action against FSH.

### EVIDENCE OF LOST PROFITS

In its first two points of error, FST contends that the trial court erred in entering an instructed verdict and refusing to submit questions to the jury on its causes of action against Szczepanik, Simmons, Cooper, and RAAI on the basis that there was no evidence of lost profits. The parties agree that the proper measure of damages for these causes of action is lost profits. FST argues that there was evidence to raise the issue of lost profits. Szczepanik, Cooper, Simmons, and RAAI argue, however, that there was no evidence to raise the issue of lost profits because (1) there was no evidence upon which to calculate lost profits with any reasonable degree of certainty, (2) the evidence of FST's profitability was not based upon any objective criteria, (3) there was no evidence that FST's expenses had been considered in calculating its profitability, and (4) there was no evidence of the amount of time FST managed its customers' accounts.

### Standard of Review

■ In reviewing the trial court's grant of an instructed verdict on an evidentiary basis, we determine whether there is any probative evidence to raise fact issues on the material questions presented. *See Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex.1978); *Director of Dallas County Child Protective Servs. v. Bowling*, 833 S.W.2d 730, 731 (Tex. App.—Dallas 1992, no writ). We consider the evidence in the light most favorable to the party against whom the verdict was instructed and disregard all contrary evidence and inferences and give the losing party the benefit of all reasonable inferences arising therefrom. *See Collora*, 574 S.W.2d at 68; *Director of Dallas County Child Protective Servs.*, 833 S.W.2d at 731. Every reasonable meaning deducible from the evidence is to be indulged in the nonmovant's favor. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 931 (Tex. 1983); *Miller v. Gann*, 822 S.W.2d 283, 289 (Tex.App.—Houston [1st Dist.] 1991), *writ denied per curiam*, 842 S.W.2d 641 (Tex. 1992). If there is any conflicting evidence of probative value on any theory of recovery, an instructed verdict is improper, and the issue must go to the jury. *White v. Southwestern Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex.1983); *Miller*, 822 S.W.2d at 289–90.

■ As to the propriety of refusing to submit issues to the jury, a trial court may not properly refuse to submit a question merely because the evidence is factually insufficient to support an affirmative finding. *Garza v. Alviar*, 395 S.W.2d 821, 824 (Tex. 1965); *Essex Crane Rental Corp. v. Striland*

*Constr. Co.*, 753 S.W.2d 751, 755 (Tex.App.—Dallas 1988, writ denied). If there is some evidence to support the submission of a question, the trial court's refusal to submit such a question is reversible error. *Southwestern Bell Tel. Co. v. Thomas*, 554 S.W.2d 672, 674 (Tex.1977); *Blonstein v. Blonstein*, 831 S.W.2d 468, 471 (Tex.App.—Houston [14th Dist.]), *writ denied per curiam*, 848 S.W.2d 82 (Tex.1992). This evidence must be reviewed in the same manner as if the trial court had granted a motion for instructed verdict. *Blonstein*, 831 S.W.2d at 471.

### Lost Profits

■■■■■ Recovery of lost profits does not require that the loss be susceptible to exact calculation. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex.1992). The injured party, however, must do more than show that it suffered some lost profits. *Id.* The amount of the loss must be shown by competent evidence with reasonable certainty. *Id.* What constitutes reasonably certain evidence of lost profits is a fact determination. *Id.* Opinions or estimates of lost profits are competent evidence of lost profits if based on objective facts, figures, or data from which the amount of lost profits can be ascertained. *See id.* It is not necessary to produce in court documents supporting the opinions or estimates, although supporting documentation may affect the weight of the evidence. *Id.* Recovery of lost profits must be predicated on one complete calculation, but there is more than one correct method to calculate lost profits. *Id.* at 85.

■■■■■ If the business for which lost profits are sought is shown to be an ongoing business, then evidence that the business was established and making a profit at the time of the breach or tort is admissible to show lost profits. *Turner v. PV Int'l Corp.*, 765 S.W.2d 455, 465 (Tex.App.—Dallas 1988), *writ denied per curiam*, 778 S.W.2d 865 (Tex.1989). Lost profits must be based on net profits, not gross revenues. *Holt Atherton*, 835 S.W.2d at 83 n. 1; *Turner*, 765 S.W.2d at 465. "Net profits" is defined as the difference between a business's total receipts and all of the expenses incurred in

carrying on the business. *Turner*, 765 S.W.2d at 465.

### FST's Lost Profits Evidence

■■■ The evidence, viewed in the light most favorable to FST, shows that FST lost approximately $40 million in customer accounts to RAAI beginning in mid–1991 and that FST would have received revenues of at least three-fourths of one percent per year from those accounts. This evidence raises a fact issue with respect to the amount of revenues lost by FST to RAAI. The evidence, viewed in the light most favorable to FST, also shows that FST expected to keep those accounts as long as the customers were alive and that the customers' life span could be determined from their birth dates shown on their trust applications admitted into evidence. This evidence raises a fact issue as to the number of years FST would lose revenue from those accounts transferred to RAAI.

Szczepanik, Cooper, Simmons, and RAAI argue that evidence of the amount of lost revenues fails to raise a fact issue with respect to lost profits because the amount of lost revenues does not take into account FST's expenses. There is, however, other evidence that, when viewed in the light most favorable to FST, raises a fact issue with respect to FST's lost profits. When we view the evidence in the light most favorable to FST, it shows that FST was established in 1987 and was making a profit in May 1990, just prior to when FST's causes of action arose. It also shows that in May 1991, FST had $350 million in assets consisting of customer accounts. Bret testified that FST's actual profits for 1991 were expected to be $30,000 and that this figure took into account such objective data as extraordinary legal expenses and "other items of like kind." Bret's testimony about the $30,000 profit figure was given in terms of calculations and took into account certain expenses. It was, thus, more than conjecture, speculation, or guesswork. This evidence, therefore, raises a fact issue with respect to the amount of FST's net profits in 1991.

The evidence of the amount of FST's customer accounts assets and the amount of net profits for 1991 raises a fact issue with re-

spect to FST's profit margin. The evidence of FST's profit margin and the amount of the gross revenues lost from the accounts that were transferred to RAAI raises a fact issue as to the amount of profits lost by FST as a result of the transfer of those accounts. We, therefore, conclude that, viewing the evidence in the light most favorable to FST, there is some evidence that raises fact issues regarding the calculation of the amount of FST's lost profits with reasonable certainty based upon a net profits calculation using objective criteria. Thus, the trial court erred in granting the instructed verdict and refusing to submit issues to the jury on FST's causes of action on the basis that there was no evidence of lost profits. We sustain FST's first two points of error. Because of our disposition of FST's first two points of error, we need not reach FST's remaining points of error.

## FSH'S DEFENSES TO SZCZEPANIK'S CAUSE OF ACTION

■ In its sole point of error, FSH contends that the trial court erred in refusing to submit a question to the jury regarding its defenses to Szczepanik's salary and reimbursement cause of action. FSH argues that a stipulation between the parties made on the record provided that FSH owed Szczepanik a certain amount pursuant to his salary claim subject to the defenses raised by FSH in its pleadings on file in the case. FSH contends that since the parties agreed, pursuant to this stipulation, that FSH owed Szczepanik a certain sum subject to its defenses, the trial court erred in refusing to submit its jury question regarding these defenses. In addition, FSH contends that the evidence raises fact issues with respect to its defenses, and thus, the trial court should have submitted its question.

■ The stipulation to which FSH refers does not appear anywhere in the record before us. FSH attached as an exhibit to its brief a copy of the statement of facts from the trial court proceeding during which the stipulation was made of record. Exhibits to briefs that do not otherwise appear in the appellate record, however, are not part of that record. *Perry v. Kroger Stores*, 741

S.W.2d 533, 534 (Tex.App.—Dallas 1987, no writ). Because the agreement upon which FSH relies in support of its point of error is not part of the record before us, we cannot determine the merits of FSH's point of error. *See Charles v. Zamora*, 811 S.W.2d 174, 176 (Tex.App.—Corpus Christi 1991, writ denied); *see also* Tex.R.App.P. 53. Moreover, we must presume that the omitted stipulation supports the trial court's judgment. *See Haynes v. McIntosh*, 776 S.W.2d 784, 785 (Tex.App.—Corpus Christi 1989, writ denied).

■ In addition to the salary stipulation not appearing in the record, the failure to submit FSH's requested question was not reversible error because it was not properly submitted to the court. The trial court's failure to submit a question shall not be deemed a ground for reversal of the judgment unless the party relying on the question requests submission of the question in writing in substantially correct wording. Tex. R.Civ.P. 278, 279. FSH pleaded the affirmative defenses of fraud, failure of consideration, and legal capacity to Szczepanik's cause of action. FSH's requested question that it contends was error for the court not to submit to the jury was: "Do you find that Szczepanik performed his duties under his contract with [FSH]?" We cannot conclude that FSH's requested question was a request to the court in substantially correct wording to submit to the jury the defenses of fraud, failure of consideration, and legal capacity. FSH's proposed question involves the issue of whether Szczepanik breached his contract with FSH. This question fails to encompass FSH's affirmative defenses. Since FSH failed to request submission of a question relating to its defenses in substantially correct wording, the trial court's failure to submit a question on those defenses was not a ground for reversal. We overrule FSH's point of error.

We reverse that portion of the trial court's judgment granting Szczepanik, Cooper, Simmons, and RAAI a take nothing judgment on FST's causes of action against them for misappropriation of trade secrets, tortious interference with contracts, tortious interference with business relationships, breach of fiducia-

ry duty, violation of the duty of good faith and fair dealing, breach of contract, civil conspiracy, unfair competition, and misappropriation of corporate opportunity and remand that portion of the case to the trial court for further proceedings consistent with this opinion. We affirm the trial court's judgment in all other respects.