In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-01-045 CV


____________________



IN THE ESTATE OF WILLIAM JAMES BROADDUS






On Appeal from the County Court at Law 


Polk County, Texas


Trial Cause No. 06357






O P I N I O N


 This case arises from a will contest. Derryl Mark Broaddus, Virginia Broaddus
McDaniel, Janie Broaddus Marshall, Bonnie Broaddus Benkula, James Earl Broaddus, and
Kimberly Dawn Broaddus, a minor, by and through her attorney ad litem, Linda J. Jones
(appellants) appeal a judgment in favor of Helen Schlitzkus. Severed from the main case
was the issue of whether Helen Schlitzkus was the common law wife of the deceased,
William James Broaddus ("Bill"). Trial was held solely on that issue. 

 Jury charge question 1 asked the jury to determine whether Helen and Bill had
entered into an informal or common law marriage. The jury was instructed that the
elements of such a marriage were that the couple had: (1) agreed mutually to be husband
and wife; (2) lived together in this state as husband and wife after the agreement; and (3)
represented to others that they were married. (1) The jury found that Helen and Bill entered
into an informal or common law marriage in 1992, and the trial court entered judgment
that Helen and Bill had been husband and wife since 1992 and that Helen was Bill's
surviving spouse.

 In six issues, appellants - the children or grandchildren of the deceased - challenge
the legal and factual sufficiency of the evidence regarding whether Helen and Bill agreed
to be husband and wife, and also challenge the legal and factual sufficiency of the evidence
regarding whether they held themselves out as husband and wife, or represented to others
that they were married. Thus, appellants challenge two of the three elements that Helen
had to prove to establish she and Bill had an informal marriage.

 We address the legal sufficiency points first. Under the traditional legal sufficiency
or no-evidence review, we consider only the evidence and inferences tending to support
the trial court's finding, and disregard all contrary evidence and inferences. Wal-Mart
Stores, Inc. v. Gonzalez, 968 S.W.2d 934, 936 (Tex. 1998)(citing Continental Coffee
Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996)). Every reasonable inference
is indulged in favor of the prevailing party. See Associated Indem. Corp. v. CAT
Contracting, Inc., 964 S.W.2d 276, 285-86 (Tex. 1998). If there is more than a scintilla
of evidence to support the finding, a no-evidence challenge fails. Leitch v. Hornsby, 935
S.W.2d 114, 118 (Tex. 1996).

 Appellants' legal sufficiency challenges to Helen's proof of agreement and
representation fail. Helen testified she and Bill agreed to be husband and wife and lived
together as such. Helen's testimony alone provides legally sufficient evidence that Helen
and Bill agreed to be husband and wife. See Winfield v. Renfro, 821 S.W.2d 640, 645
(Tex. App.--Houston [1st Dist.] 1991, writ denied) (citing Collora v. Navarro, 574
S.W.2d 65, 70 (Tex. 1978)). (2)

 As to the representation element, we find the evidence is also legally sufficient.
"Representing to others" is synonymous with "holding out to the public." See In the
Matter of the Estate of Giessel, 734 S.W.2d 27, 30 (Tex. App.--Houston [1st Dist.] 1987,
writ ref'd n.r.e.). "Holding out" may be established by conduct and actions of the parties;
words are not required to establish representation as husband and wife. See Winfield, 821
S.W.2d at 648. However, both conduct and words are present here. Helen testified that
after she and Bill agreed to be married and started living together as husband and wife,
they both represented to others that they were married. Debbie Clendennen, Helen's
daughter, and other family friends testified Bill had referred to Helen as his wife, and the
couple had introduced themselves as husband and wife. Residents of Impala Woods, the
Lake Livingston community where Helen and Bill lived together, testified that Bill and
Helen used the names "Bill and Helen Broaddus", had the reputation in the community as
husband and wife, and signed the guest book for home owners' meetings as "Helen and
Bill Broaddus." The evidence is legally sufficient that they represented to others they were
married. See Winfield, 821 S.W.2d at 649. Thus, we overrule both of appellants' legal
sufficiency issues.

 As to appellants' four factual insufficiency issues, (3)
 we note Helen had the burden
of proof on the agreement and representation elements challenged in these issues. See
Russell, 865 S.W.2d at 932. If a party is attacking the factual sufficiency of an adverse
finding on an issue to which the other party has the burden of proof, the attacking party
must demonstrate that there is insufficient evidence to support the adverse finding. See
Hickey v. Couchman, 797 S.W.2d 103, 109 (Tex. App.--Corpus Christi 1990, writ
denied). Thus, in considering appellants' factual insufficiency issues, we weigh all of the
evidence in support of and contrary to the finding. Ortiz v. Jones, 917 S.W.2d 770, 772
(Tex.1996); Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989). We
are to set aside the verdict only if the evidence supporting the jury finding is so weak as
to be clearly wrong and manifestly unjust. See Cain v. Bain, 709 S.W.2d 175, 176 (Tex.
1986). Further, a reviewing court defers to the fact-finder's credibility determinations
because [t]he jury is the exclusive judge of the facts, the witnesses' credibility, and the
weight given to their testimony." Beniot v. Wilson, 150 Tex. 273, 239 S.W.2d 792, 796
(Tex. 1981).

 Here, in addition to evidence considered in our legal sufficiency review, there is
further evidence supporting the jury's findings. Helen testified Bill asked her to marry
him, but she declined to go through a ceremonial marriage because of a preexisting
medical condition that would impede her obtaining new medical insurance. However, they
agreed to be husband and wife and began living as such. They both represented to others
they were married and made agreements concerning their financial affairs, including the
agreement to continue filing separate tax returns. 

 Other witnesses, primarily Helen's friends and relatives, presented testimony
supporting the couple's agreement to be married and their representations that they were
married. According to Debbie Clendennen, Helen's daughter, Bill said he and Helen had
agreed to be married. Further, Bill told Mable Hunt, a friend, that "he was married, in
God's eyes, to Helen." Both Judith Stark and Albina Peschke testified that, during Bill's
hospitalization, nurses referred to Helen as "Mrs. Broaddus" and neither Bill nor Helen
corrected them. Linda Preuit, Helen's niece, testified that Bill and Helen "lived together
as husband and wife for eight years."

 In addition, testimony from several residents of Impala Woods and some of Bill's
medical records support the jury's findings. Edith Mosby, a neighbor, testified they
represented themselves to others as "Bill and Helen Broaddus" and that they were
considered by the community to be married. Carol Lister, a neighbor, testified that Bill and
Helen had the reputation of being married. Lawrence Hall, a neighbor, testified that Helen
and Bill lived together as husband and wife, and he understood their relationship to be a
common law marriage. Lawrence further testified that he was shocked when Bill called
him on March 22, 1999, (the day before Bill's death) and denied ever being married to
Helen. Patricia McCleney, a neighbor, testified she heard another neighbor approach
Helen and offer condolences, saying "Mrs. Broaddus, I didn't know you lost your
husband." Finally, various of Bill's medical records, as well as correspondence from his
doctors, indicate Bill was married or that Helen was his wife.

 The record also contains considerable evidence supporting appellants' contentions,
much of which comes from appellants or their friends and relatives. Janie Marshall, one
of the appellants, testified she and Helen had often discussed Helen's relationship with Bill,
and that Helen said she could not marry Bill because she would lose her pension. Janie
stated it was common knowledge within the family that Bill and Helen were not going to
marry. Bonnie Benkula, another of the appellants, testified Bill told her that he and Helen
were not married, and that Helen stated several times that she could not marry Bill. Steve
Sutherland and Wilmer Gaubatz both heard Bill deny he was married to Helen. Some of
these witnesses understood Helen could not be married because she would lose her pension
benefits. Appellants also note that while Helen testified the impediment to a ceremonial
marriage was related to her illness and ability to obtain insurance, and not the loss of her
pension benefits, Helen never reported her marriage to the railroad. They argue that the
couple did not have a permanent relationship, but rather that the evidence shows the couple
sometimes stated they were married, and sometimes stated they were not. Appellants also
argue the evidence shows that Bill, on his death bed, "proclaimed loud and long" that he
was not married. Admitted into evidence for the jury's consideration was a tape recording
of conversations between Bill and his son, Mark. In those conversations, Bill denied
repeatedly that he and Helen were married. On cross-examination, Mark explained that
Bill, upon his release from the hospital and shortly before his death, was staying in Mark's
home. At the time, Bill was taking a "group" of medications, including morphine. 

 Appellants also refer to various documents to support their contentions. In her tax
returns for 1991, 1992, 1995, 1996, and 1997, Helen claimed to have been single. In
1997, Bill claimed to be single on his tax return. Appellants also refer us to various
medical records dated from January through March, 1999. One indicated Bill's marital
status as "widowed," and refers to Helen as his "friend." Another shows Bill as
"divorced." Another forms refer to Helen as a "significant other," and one states Bill is
"widowed." Finally, an assessment form stated that Bill lived at home with a "lady
friend" and he had been widowed for eight years. (4)

 Both Helen and the appellants vigorously presented evidence supporting their
positions. The evidence was conflicting, and, obviously, the jury resolved much of that
conflict in Helen's favor. This is the jury's role and function. The right to determine
credibility lies exclusively with the jury. Benoit, 293 S.W.2d at 796. Having been
presented with factually sufficient - though conflicting - evidence, the jury found in favor
of Helen. Appellants' four factual sufficiency issues are overruled. 

 Accordingly, we affirm the trial court's judgment in favor of Helen Schlitzkus. 





 DON BURGESS

 Justice


Submitted on September 5, 2001

Opinion Delivered September 27, 2001

Do Not Publish


Before Walker, C.J., Burgess and Gaultney, JJ.
1. A party seeking to establish a common law marriage must prove these three
elements. See Russell v. Russell, 865 S.W.2d 929, 932 (Tex. 1993); see also Tex. Fam.
Code Ann. § 2.401(a)(2) (Vernon 1998).
2. On appeal, appellants argue that admitting the testimony of a surviving spouse to
a common law violates Rule 601(b) of the Texas Rules of Evidence. Appellants do not
contend that this point was preserved for appellate review, however; thus, we do not
consider it. See Tex. R. App. P. 33.1
3. Appellants present their factual sufficiency arguments both as "insufficient
evidence" issues and "great weight and preponderance" issues. Factual sufficiency issues
are designated either as "great weight and preponderance" issues--if the complaining party
had the burden of proof at trial--or, if not, then as "insufficient evidence" issues. See 
Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co., 766 S.W.2d 264, 275 (Tex.
App.--Amarillo 1988, writ denied). Because Helen had the burden of proof, we consider
all four of appellants' factual sufficiency arguments as "insufficient evidence" issues. See
Raw Hide Oil, 766 S.W.2d at 276. The distinction between the two reviews has been
explained as follows: an "insufficient evidence" review is appropriate when the evidence
presented to support a vital fact (even if it is the only evidence on the issue) is factually
too weak alone to support it, while an issue contending that the jury's affirmative finding
is against the "great weight" asserts the insufficiency of the evidence to support a finding
of the existence of a vital fact when the great preponderance of the evidence supports its
non-existence. See id.; see Robert W. Calvert, "No Evidence" and "Insufficient
Evidence" Points of Error, 38 Texas L. Rev. 361, 366 (1960). However, some courts
of appeal have emphasized that the "same standard of review applies in reviewing factual
sufficiency challenges regardless of whether the court of appeals is reviewing a negative
or affirmative jury finding and regardless of which party had the burden of proof." 
Blonstein v. Blonstein, 831 S.W.2d 468, 473 (Tex. App.--Houston [14th Dist.] 1992, writ
denied)(citing M.J. Sheridan & Son v. Seminole Pipeline, 731 S.W.2d 620, 623 (Tex.
App.--Houston [1st Dist.] 1987, no writ)).

4. Appellants also refer to Movant's exhibit 16 to support their contentions. 
However, the trial court sustained appellants' objections to admitting this document and,
thus, it was not admitted into evidence. Generally, documents not admitted into evidence
are not considered by the appellate court. See Vanscot Concrete Co. v. Bailey, 862
S.W.2d 781, 783 (Tex. App.--Fort Worth 1993), aff'd, 894 S.W.2d 757 (Tex. 1995).