**Maurice BLONSTEIN, Individually and as Independent Executor of the Estate of David Blonstein, Deceased, Appellant,**

v.

**Esther BLONSTEIN, Appellee.**

**No. B14–91–00707–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

May 14, 1992.

Rehearing Denied June 18, 1992.

Thomas C. Wright, Houston, for appellant.

James Patrick Smith, Frank W. Mitchell, Houston, for appellee.

Before PAUL PRESSLER, MURPHY and CANNON, JJ.

## OPINION

PAUL PRESSLER, Justice.

The appellant seeks to set aside a jury verdict upholding a post-nuptial agreement between David and Esther Blonstein. The judgment of the trial court is affirmed.

In 1947 David and Esther Blonstein were married. On September 3, 1986, they entered into a post-nuptial agreement which categorized each of their assets as either community or separate property, agreed that all income from separate property would be separate property, conveyed a life estate interest in all the community property to the surviving spouse, mutually released any claim either would have to the other's separate property, and stipulated that when the surviving spouse died, the life estate in the community property would pass to any remaindermen as set out in the will of the first to die. The couple's total estate was worth approximately 3.5 million dollars. Under the agreement, Esther was entitled to approximately 2.5 million dollars because Esther had inherited a great deal of separate property. In 1989 David Blonstein died, and his brother Maurice, named by David as the executor of his will, sought to set aside the post-nuptial agreement contending that David had not signed the agreement voluntarily, that David was not competent when the agreement was signed, and that Esther had failed to make full disclosure of her property to David before he signed the agreement.

In his first six points of error, the appellant contends the trial court erred in failing to submit to the jury certain defensive issues which were properly requested and supported by some evidence. They concerned duress, overreaching, undue influence, fraud, estoppel and breach of fiduciary duty.

■■■ The trial court has great discretion in submitting broad-form jury questions. *Mobil Chem. v. Bell*, 517 S.W.2d 245, 256 (Tex.1974); TEX.R.CIV.P. 277. This discretion is subject only to the requirement that the questions submitted must fairly submit the disputed issues for the jury's determination. *Baker Marine Corp. v. Moseley*, 645 S.W.2d 486, 489 (Tex. App.—Corpus Christi 1982, writ ref'd n.r.e.); TEX.R.CIV.P. 277. The entire charge to the jury must be considered to determine whether an omission is prejudicial. *Interfirst Bank Dallas, N.A. v. Risser*, 739 S.W.2d 882, 897 (Tex.App.—Texarkana 1987, no writ). The burden is on the appellant to show a probability of harm. *Id.*

■■■ The trial court may not properly refuse to submit a question merely because the evidence is factually insufficient to support an affirmative finding. *Garza v. Alviar*, 395 S.W.2d 821, 824 (Tex.1965); *Essex Crane Rental Corp. v. Striland Constr. Co.*, 753 S.W.2d 751, 755 (Tex.App.—Dallas 1988, writ denied). If there is some evidence to support the submission of a question, the trial court's refusal to submit such a question is reversible error. *Southwestern Bell Tel. Co. v. Thomas*, 554 S.W.2d 672, 674 (Tex.1977). This evidence must be reviewed in the same manner as if the trial court had given an instructed verdict. *Phillips Pipeline Co. v. Richardson*, 680 S.W.2d 43, 48 (Tex.App.—El Paso 1984, no writ). The evidence must be considered in the light most favorable to the party against whom the questions were refused. If there is any conflicting probative evidence, those questions should have been submitted for the jury's determination. *Id.*

■■■ The first three issues requested by the appellant were duress, overreaching and undue influence. They inquired as to whether David Blonstein's free will was overcome by threats or other acts of Esther Blonstein. The first question actually submitted to the jury asked: "Did David Blonstein voluntarily execute the marital property agreement?" This broad-form question encompassed those three defensive issues. If they had been submitted in addition to the first question, it would have required the jury to answer the same question four different ways. Asking whether David Blonstein acted voluntarily is the same as asking whether he acted by his free will.

■■■ The other three defensive issues requested by appellant were fraud, estoppel and breach of fiduciary duty. They concerned whether Esther Blonstein had misrepresented or failed to disclose information about the property schedule attached to the marital agreement. The question actually submitted to the jury asked: "Was David Blonstein provided a fair and reasonable disclosure of the property or financial obligations of Esther Blonstein or did David Blonstein have or reasonably could have had an adequate knowledge of the property or financial obligations of Esther Blonstein?" This question contained, because of its broad form, those defensive issues requested by the appellant. Again, if the trial court had submitted these, it would have allowed required the jury to answer the same question three more times.

The trial court did not abuse its discretion in refusing to submit the issues requested by the appellant. They were submitted in broad form in jury questions one and two. Appellant's first six points of error are overruled.

In his seventh point of error, appellant alleges the trial court erred in giving retroactive effect to the 1987 amendments to TEX.FAM.CODE ANN. § 5.55. Prior to 1987, a marital agreement could be enforced only if the party seeking enforcement proved by clear and convincing evidence that the party against whom enforcement was sought had given informed consent and that the agreement was not procured by fraud, du-

ress or overreaching. Acts 1981, 67th Leg., Ch. 782, sec. 2, 1981 Tex.Gen.Laws 2964, 2964–65 (amending sections 5.41 and 5.42, and adding sections 5.43–5.46). In 1987, the 70th Legislature amended chapter 5 of the Texas Family Code to shift the burden of proof in TEX.FAM.CODE ANN. § 5.55. Under the amendment, the party challenging the enforceability of the property agreement has the burden of proving the agreement was involuntary, unconscionable or that the party signing the agreement was not provided with or did not waive his right to a fair and reasonable disclosure of assets and liabilities. *Daniel v. Daniel,* 779 S.W.2d 110, 114 (Tex.App.—Houston [14th Dist.] 1989, no writ). The burden of proof established by the 1987 amendment was applied here. Appellant argues the trial court should have used the 1981 law that was in effect at the time the 1986 agreement was signed.

▬▬▬▬ The amendment to § 5.55 did not expressly provide that it should be given retroactive effect. In the absence of such a provision, the amendment would not usually be applied retrospectively. *See Brooks v. Texas Employers Ins. Ass'n,* 358 S.W.2d 412, 413–14 (Tex.Civ.App.—Houston 1962, writ ref'd n.r.e.). However, this general rule does not apply when the amendment is merely procedural or remedial. *Daniel,* 779 S.W.2d at 113; *see Phil. H. Pierce Co. v. Watkins,* 114 Tex. 153, 158, 263 S.W. 905, 907 (1924). A procedural amendment is one which effects the manner in which a suit is conducted with application to pleading, evidence, etc. *Brooks,* 358 S.W.2d at 414. Procedure involves every step in a trial or appeal. *Id.* A remedial matter pertains to the practice and procedure by which substantive law is made effective. *Id.* Substantive law on the other hand, relates to the rules and principles which fix and declare the primary rights of individuals and provides the type of remedy available in case of invasion of those rights. *Id.* Where the issue concerns a procedural matter, the courts should apply the law that is in effect at the time the suit or contest is brought. When the issue involves the substantive law, the courts should apply the law that was in effect

when the action or agreement occurred. *See Sadler v. Sadler,* 769 S.W.2d 886 (Tex. 1989); *Chiles v. Chiles,* 779 S.W.2d 127 (Tex.App.—Houston [14th Dist.] 1989, writ denied); *Daniel v. Daniel,* 779 S.W.2d 110 (Tex.App.—Houston [1st Dist.] 1989, no writ).

▬▬▬▬ Section 5.55 establishes a statutory procedural scheme for challenging the enforceability of a post-nuptial property agreement executed pursuant to the statute. The amendment did nothing more that shift the burden of proof to the party challenging the agreement. No substantive rights were effected. The amendment simply revised the procedures to be followed by the courts in litigation occurring after the effective date of the amendment. *Daniel,* 779 S.W.2d at 113. Since § 5.55 is merely procedural and remedial in nature, the trial court properly applied the 1987 amendment. Appellant's seventh point of error is overruled.

▬▬▬▬ Appellant's eighth point of error also concerns § 5.55. Section 5.55(b) states that the trial court shall decide whether the marital agreement is unconscionable and such issue "... shall be decided by the court as a matter law." Appellant argues this determination should have been made early in the proceedings. While this court finds that an early determination is the better practice, the statute does not require the trial court to make the determination prior to submitting the case to the jury. The section requires only that the trial judge make the finding as a matter of law. In the judgment it is stated that the agreement was not unconscionable. There was no jury question on this issue. Whether the trial court based its holding on the jury findings or other evidence is irrelevant. Because the trial court made its finding as required by § 5.55, point of error eight is overruled.

▬▬▬▬ Appellant's ninth point of error alleges that the trial court erred in admitting reports of the appellee's expert witness which had not been provided in response to discovery requests. Four charts were introduced. Appellant objected on the

ground that the charts had not been provided in response to discovery requests. Appellee argued that they were merely compilations of previously provided data and contained no new information. The trial court so found. They were merely a summary of the witnesses' testimony which the jury had previously heard. There had been no objection to that testimony. Admission of exhibits which are merely cumulative of testimony is at worst harmless error and is not a basis for reversal. *Gee v. Liberty Mutual,* 765 S.W.2d 394, 396 (Tex.1989). Admission of these charts was not reasonably calculated to cause and probably did not cause the rendition of an improper judgment. Appellant's ninth point of error is overruled.

In his tenth and eleventh points of error, appellant claims the trial court erred in failing to grant his motion for new trial because the jury's answers to questions one and two were not supported by factually sufficient evidence or were against the great weight and preponderance of the evidence.

The same standard of review applies in reviewing factual sufficiency challenges regardless of whether the court of appeals is reviewing a negative or affirmative jury finding and regardless of which party had the burden of proof. *M.J. Sheridan & Son v. Seminole Pipeline,* 731 S.W.2d 620, 623 (Tex.App.—Houston [1st Dist.] 1987, no writ). After consideration of all of the evidence, a verdict will be set aside only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex.1986); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Rego Co. v. Brannon,* 682 S.W.2d 677, 680 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). An appellate court may not substitute its conclusions for that of the trier of fact merely because it might have found differently. *Herbert v. Herbert,* 754 S.W.2d 141, 144 (Tex.1988); *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792, 796 (1951).

In answer to jury question number one, the jury found that David Blonstein had voluntarily signed the marital agreement. In answer to question number two, the jury found that Esther Blonstein had made full disclosure to her husband concerning the property in the agreement or that he had access to that information. Appellant argues the evidence is insufficient to support such findings. In his brief, appellant focuses only on the evidence that is favorable to his position. He points to medical testimony that the deceased had suffered a series of small strokes, that his former attorney testified that he called him for help because his wife was forcing him to sign the marital agreement, and there was an affidavit allegedly signed by the deceased and partially in his handwriting wherein he asserts that he did not sign the agreement voluntarily nor was he aware of the nature or amount of his wife's separate property. If viewed alone, appellant's argument might carry some weight. However, this court must review all of the evidence in the record before making a determination.

A review of the entire record shows that this was at best a swearing match. Contrary evidence included the testimony of the notary who witnessed the agreement's being signed. She was a bank employee who recalled that the Blonsteins approached her desk and asked her to notarize a document. She testified that both spouses appeared to know what they were doing, and while she was notarizing the agreement, they were talking about an upcoming cruise they were planning and there was absolutely no indication that he was not acting voluntarily. Both the widow and Maurice testified that the deceased could not be forced to sign anything. The jury heard how the couple had been happily married for approximately forty years at the time the agreement was signed. Maurice was unable to recall a single complaint from the deceased concerning his wife in September or October of 1986. A long-

time family friend testified that the couple had a very good relationship. The nurse who attended the deceased during the last month of his life testified that the widow visited her husband several times a day and that he was given the best possible care. Another nurse testified that he showed love and affection for his wife whenever they were together. The appellant himself testified that the deceased was competent and freely signed his will on December 11, 1987. Appellant was an heir under that will. He also contended that a year earlier David was forced to sign the marital agreement and was not competent to do so because of his illness.

There was evidence to show that not only was the deceased informed about his wife's property but he had been extremely active in tending to finances during the marriage. They filed a joint tax returns each year. There was evidence that he had complete access to their bank records and that he picked up certain bank records only a month before the agreement was signed. There was testimony that he sat down each year with a bookkeeper or accountant and went through each and every schedule on the tax return and discussed which part of the reportable income was from his assets and which was from his wife's. The evidence showed that all records were available to the deceased at all times, and that he had visited certain properties classified as her separate estate.

The affidavit allegedly signed and written by the deceased, which stated that he had not signed the agreement voluntarily, was prepared by his attorney who was also Maurice's attorney and was sent to the deceased "care of Maurice." The handwritten statement was undated and produced by the same attorney.

The jury also heard that Maurice Blonstein had previously challenged the will of another of his brothers claiming that that brother was also incompetent when he executed his will. Maurice also had a monetary interest in the outcome of the lawsuit.

The evidence cited here, along with the additional evidence in the record, was more than sufficient to support the jury's answers to questions one and two. Appellant's tenth and eleventh points of error are overruled.

The judgment is affirmed.