**HARRIS COUNTY APPRAISAL DISTRICT, Appellant,**

v.

**COASTAL LIQUIDS TRANSPORTATION, L.P., Appellee.**

and

**Coastal Liquids Transportation, L.P., Appellant,**

v.

**Harris County Appraisal District, Appellee.**

**No. 01-98-00017-CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 30, 1999.

---

Mario L. Dell'Osso, Houston, for Appellant.

William Ikard, Austin, J. "Buster" Brown, Lake Jackson, for Appellee.

Panel consists of Justices COHEN, HEDGES, and NUCHIA.

## OPINION ON MOTION FOR REHEARING

ADELE HEDGES, Justice.

Coastal Liquids Transportation, L.P. ("Coastal") and the Harris County Appraisal District ("Appraisal District") filed separate appeals complaining about the trial court's granting and denial of cross-summary judgment motions. The Court today considered Coastal's motion for rehearing. The motion for rehearing is granted. We withdraw our opinion and judgment dated June 24, 1999, and issue this opinion in its stead. We affirm. All other pending motions are overruled as moot.

### Background

Coastal challenged the Appraisal District's 1994 assessment for ad valorem tax of six underground storage facilities. After the Appraisal District's review board issued its order, Coastal filed a suit for judicial review in district court. The following year, Coastal challenged the Appraisal District's 1995 appraisal of the six underground storage facilities. After the review board issued an order for the 1995 tax appraisal, Coastal amended its 1994 petition and sought review of the 1995 order.

The Appraisal District moved for summary judgment, claiming that for a variety of reasons, Coastal did not have standing to file its suit for judicial review. Coastal then moved for summary judgment, claiming that the appraisal of the six underground storage units improperly resulted in multiple taxation. The district court

rendered judgment for the Appraisal District for the 1994 tax year and rendered judgment for Coastal for the 1995 tax year.

### Standard of Review

When considering cross-motions for summary judgment, we can consider both motions and reverse and render the judgment that the trial court should have rendered. *CU Lloyd's v. Feldman*, 977 S.W.2d 568, 569 (Tex.1998).

Summary judgment is proper only when a movant establishes there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995). In reviewing the summary judgment, we indulge every reasonable inference in favor of the nonmovant, resolve any doubts in its favor, and take as true all evidence favorable to it. *Id.; Bangert v. Baylor College of Med.*, 881 S.W.2d 564, 565–66 (Tex.App.—Houston [1st Dist.] 1994, writ denied). A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of each of the plaintiff's causes of action or if it conclusively establishes all elements of an affirmative defense as a matter of law. *Johnson*, 891 S.W.2d at 644.

### 1994 Tax Year

■ The summary judgment order did not state the grounds on which the summary judgment was granted. When there are multiple grounds for summary judgment and the order does not specify the ground on which the summary judgment was rendered, appellant must negate all grounds on appeal. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 379 (Tex. 1993). If the appellant fails to negate each ground on which the judgment may have been rendered, the appellate court must uphold the summary judgment. *Id.*

### Standing Despite Failure to Pay Registration Fees

The Appraisal District contends that Coastal lacked standing to file a suit for judicial review of the board's order because, among other reasons, Coastal had not registered with the secretary of state.

■ A foreign limited partnership transacting business in Texas "may not maintain an action, suit, or proceeding" in Texas until it has registered in Texas and paid the appropriate fees. TEX.REV.CIV. STAT. ANN. art. 6132a–1, § 9.07(a) (Vernon Supp.1999). The undisputed evidence shows that Coastal had not registered when it filed the suit for judicial review. In fact, the record contains no evidence that Coastal has ever registered, although Coastal contends on rehearing that it has recently amended its registration.[1] In our original opinion, we held that Coastal lacked standing to appeal the 1994 appraisal because it had neither registered with the secretary of state during that period, nor taken the appropriate steps to comply with section 9.07.

However, a foreign corporation's failure to register "does not impair ... defense by the foreign limited partnership of any action, suit, or proceeding in any Texas court." TEX.REV.CIV. STAT. ANN. § 9.07(b)(3) (Vernon Supp.1999). Coastal argues, for the first time on rehearing, that its tax challenge was "defensive" in nature.

Under section 9.07(a), the sanction for Coastal's failure to register is the inability to "maintain a suit." *Id.* § 9.07(a). The Appraisal District argues that Coastal's actions should be interpreted as "maintaining a suit." In this case, Coastal challenged the Appraisal District's assessments by initiating a tax protest under TEX. TAX CODE ANN. § 41.44 (Vernon 1992), and then Coastal sued in district court for

---

1. For the first time on rehearing, Coastal requested leave to include the amended registration as part of the appellate record and

moved for remand to instruct the trial court to reopen the evidence. These motions are denied.

judicial review of the board's order. The question before us is whether these acts constitute either: (1) "maintaining a suit" under section 9.07(a), which Coastal cannot do because it did not register, or (2) the "defense [to] ... any action, suit, or proceeding in any Texas court" under section 9.07(b)(3), which Coastal could do even without registering.

We hold that Coastal's acts were the defense of an action initiated by the Appraisal District. The Appraisal District's assessment of the property valuation was an "action." Coastal "maintained a suit" for the sole purpose of "defending" the Appraisal District's action. Even though Coastal was the titular plaintiff, its posture may more accurately be described as that of a defendant because there was no other way Coastal could "defend" against what it considered to be an excessive appraisal. This is a rare circumstance in which one must "maintain a suit" to "defend an action." [2] Thus, Coastal's failure to register with the secretary of state and failure to pay the appropriate fees does not impair its ability to defend the valuation of its property. *Id.* § 9.07(b)(3).[3]

### No Standing as Lessee

The Appraisal District also alleged that Coastal did not have standing to appeal the review board's order for the 1994 tax year because Coastal did not own the storage caverns. It argues that, under what it alleges to be the applicable Tax Code provision, only a property owner may appeal an order of the appraisal review board determining a property owner's appraisal protest. TEX. TAX CODE ANN. § 42.01(1)(A) (Vernon Supp.1999).

■ On November 15, 1994, Coastal filed its suit for judicial review in district court. At that time, a plaintiff had to be the property owner in order to sue or obtain relief in a tax appeal. *Gregg County Appraisal Dist. v. Laidlaw Waste Sys., Inc.,* 907 S.W.2d 12, 16 (Tex.App.—Tyler 1995, writ denied). The property owner was the only party, other than the chief appraiser, with standing to file a suit for judicial review of a board's order determining a taxpayer's appraisal protest. *Id.* Without exception, Texas cases followed this rule and required that the plaintiff own the legal title of the property subject to the tax appeal. *Id.*

Coastal did not own the storage caverns in 1994. Rather, it leased the caverns through an assignment from Coastal States Crude Gathering Company in December 1993. Because Coastal was not the property owner, it did not have standing to appeal the 1994 order.

On August 28, 1995, a Tax Code amendment took effect that, for the first time, allowed a lessee who is contractually obligated to pay taxes to file a suit for judicial review of the board's order. TEX. TAX CODE ANN. § 42.015 (Vernon Supp.1999). Coastal argues that this 1995 amendment should be retroactively applied because it was a procedural change, not a substantive change to the law. Therefore, Coastal argues that it had standing to seek review of the 1994 tax assessment. We disagree.

■ Texas law militates strongly against the retroactive application of laws. TEX. CONST. art. I, § 16. In Texas, a statute is "presumed to be prospective in its operation unless expressly made retrospective." TEX. GOV'T CODE ANN. § 311.022 (Vernon 1988). Amendments are also presumed not to apply retroactively. *Houston Indep. Sch. Dist. v. Houston Chronicle Pub. Co.,* 798 S.W.2d 580, 585 (Tex.App.—

---

**2.** It is common, however, for courts to realign parties for various purposes in order to recognize their actual interests as "plaintiffs" even though they were sued, and as "defendants" even though they brought suit. *See, e.g. City of Houston v. Sam P. Wallace & Co.,* 585 S.W.2d 669 (Tex.1979) (realigning plaintiff

employee who secretly settled with his employer).

**3.** The Appraisal District does not argue that section 9.07 prohibited Coastal from filing its initial administrative challenges to the tax assessments, and we do not reach that issue.

Houston [1st Dist.] 1990, writ denied). Doubts are resolved against retroactive application of a statute. *Ex parte Abell,* 613 S.W.2d 255, 258 (Tex.1981).

This general rule does not apply when the amendment is merely procedural or remedial. *Reames v. Police Officers' Pension Bd.,* 928 S.W.2d 628, 631 (Tex. App.—Houston [14th Dist.] 1996, no writ). A procedural amendment is one which effects the manner in which a suit is conducted with application to, for example, a pleading or evidence. *Blonstein v. Blonstein,* 831 S.W.2d 468, 472 (Tex.App.—Houston [14th Dist.] 1992, writ denied). Procedure involves every step in a trial or appeal. *Id.* Substantive law, on the other hand, relates to the rules and principles which fix and declare the primary rights of individuals and provides the type of remedy available in case of invasion of those rights. *Id.*

For substantive matters, courts apply the law that was in effect when the action or agreement occurred. *Id.; see Sadler v. Sadler,* 769 S.W.2d 886 (Tex.1989). For procedural matters, courts apply the law that is in effect at the time the suit or contest is brought. *Blonstein,* 831 S.W.2d at 472. As a general rule, only procedural changes may be retroactively applied. *Missouri Pacific R.R. v. Dallas County Appraisal Dist.,* 732 S.W.2d 717, 720–21 (Tex.App.—Dallas 1987, no writ). Consequently, Coastal contends that the amendment was procedural.

As set out in *Laidlaw,* statutory provisions creating rights and remedies are mandatory and exclusive and must be complied with in all respects. 907 S.W.2d at 16. The rights, procedures, and remedies set forth in the Tax Code are exclusive, and supersede a property owner's common-law rights and remedies. *See id.; see also* TEX. TAX CODE ANN. § 42.09 (Ver-

non 1992). When a cause of action and remedy for its enforcement are derived not from the common-law, but from a statute, "the statutory provisions are mandatory and exclusive, and must be complied with in all respects or the action is not maintainable." *Laidlaw,* 907 S.W.2d at 16 (quoting *Texas Catastrophe Property Ins. Ass'n v. Council of Co-Owners of Saida II Towers Condominium,* 706 S.W.2d 644, 646 (Tex.1986)). Because the requirements of section 42.015 are jurisdictional and provide standing for a lessee to sue for judicial review of the board's order, we hold that the statute is substantive and does not retroactively provide standing for Coastal's suit for judicial review of the 1994 tax assessment.[4]

Coastal also argues that it had standing because it was the designated agent for the property owner. TEX. TAX CODE ANN. § 1.111(a) (Vernon 1992). Coastal misconstrues the statute's requirements.

Section 1.111 requires that the designation be made in writing. *Id.* § 1.111(b). It also provides that the comptroller adopt rules to facilitate compliance with this section. *Id.* § 1.111(h) (Vernon Supp.1999). Pursuant to this directive, the comptroller developed the following requirements for appointment of agents for property taxes:

(a) ... a property owner shall use comptroller Model Form 1.111 to designate an agent for property tax matters. For the purposes of this section, the term "property owner" includes a person who claims a legal interest in the property.

. . . .

(c) The appointment of an agent under subsection (a) of this section is not binding on an appraisal district until the

---

4. We do not believe our holding conflicts with *Missouri Pacific,* which held that a change in the Tax Code concerning the dismissal provision for nonpayment of taxes was procedural. 732 S.W.2d at 720–21. The section at issue in *Missouri Pacific* sets forth the requirements necessary to maintain the action, it does not give the right to sue for judicial review of the board's decision. TEX. TAX CODE ANN. § 42.08 (Vernon 1992 & Supp.1999).

designation form is filed with the district.

34 Tex. Admin. Code § 9.3044 (1998).

To support its designation as the property owner's agent, Coastal relies on the lease agreement between the owner of the caverns and its predecessor to the lease, Crude Gathering. This agreement gave Coastal the right to protest the tax appraisal, but there is no evidence that the agreement or a Model Form 1.111 were ever filed with the district, as required by section 9.3044(c). Because the property owner did not comply with the rules set forth by the comptroller, Coastal was never designated as the property owner's agent.

Coastal did not raise a genuine issue of material fact regarding its standing to seek judicial review of the board's order for the 1994 tax year. Therefore, the trial court properly rendered judgment for Coastal's 1994 tax claims. In light of this disposition, we need not discuss Coastal's remaining sub-points.[5]

We overrule Coastal's sole issue.

We affirm the judgment of the trial court as it pertains to the 1994 tax year.

### 1995 Tax Year

In its second amended petition filed on February 22, 1996, Coastal added its request for a review of the 1995 tax appraisal. The Tax Code provides that when the review board issues an order in a subsequent year dealing with the same property and same owner as a currently pending appeal, the owner may appeal the subsequent order either by amending its petition in the pending appeal or by filing an independent suit for judicial review, but not both. Tex. Tax Code Ann. § 42.21(c) (Vernon 1992).

5. The sub-points include the exhaustion of administrative remedies, Coastal's failure to register to transact business in Texas, and Coastal's failure to include the multiple appraisal of the storage facilities in its protest.

■ The Appraisal District argues that Coastal's amended petition was a nullity because Coastal did not have standing to bring its 1994 review. Standing is a component of subject matter jurisdiction. *Texas Ass'n of Business v. Texas Air Control Bd.,* 852 S.W.2d 440, 443 (Tex.1993). The Appraisal District argues that if a petition does not affirmatively allege jurisdictional facts concerning the subject matter of the suit, the only jurisdiction which the court has is to dismiss the suit for want of jurisdiction. *See Bullock v. Mel Powers Inv. Builder,* 682 S.W.2d 400, 403 (Tex.App.—Austin 1984, no writ). We do not believe *Bullock* is controlling, however, because it did not construe section 42.21, which specifically allowed Coastal to either file a new lawsuit or amend its pending lawsuit. Tex. Tax Code Ann. § 42.21(c).

### Standing as Lessee

■ The Appraisal District again argues that Coastal could not file a suit for judicial review of the board's 1995 order because Coastal did not own the caverns. The evidence showed that Coastal, through an assignment from Crude Gathering, leased the caverns.[6]

As discussed above, section 42.015, which became effective on August 28, 1995, allows a lessee to seek judicial review of the review board's order. Tex. Tax Code Ann. § 42.015. In 1996, Coastal filed its suit for judicial review of the 1995 tax appraisal. Section 42.015 was in effect at that time; therefore, Coastal had standing then to appeal.

### Multiple Appraisal

■ The Appraisal District contends that the trial court erred in rendering judgment for Coastal for the 1995 tax year

6. The Appraisal District attempted to create a fact issue by showing that Crude Gathering was the permit holder for the storage caverns, and that it filed yearly reports as the operator of the caverns. These facts, however, do not create a fact issue as to whether Coastal was the lessee of the storage caverns.

because the storage caverns were "improvements," and thus were subject to an appraisal separate from that of the surface land.

The Tax Code requires the Appraisal District to separately appraise land and improvements. Tex. Tax Code Ann. § 25.01 (Vernon 1992). It is undisputed that the surface land was taxed separately from the caverns. The Appraisal District contends that this separate taxation was permissible because the caverns are "improvements" to the surface land. In response, Coastal contends that the caverns, otherwise referred to as "subterranean storage vessels," are not improvements, but instead are merely a characteristic of the land that enhanced the value of the land. We must therefore determine whether the caverns are "improvements." Tex. Tax Code Ann. § 1.04(3)(A) (Vernon Supp.1999).[7]

The Appraisal District erroneously relies on *Mapco, Inc. v. Carter*, 808 S.W.2d 262, 266 (Tex.App.—Beaumont), *rev'd on other grounds*, 817 S.W.2d 686 (Tex. 1991), which distinguishes between an underground storage facility and an "unimproved, unexcavated, mineral salt interest." The *Mapco* case, which was an action for partition, did not address whether this type of storage facility was an "improvement" under the Tax Code.

Coastal relies on the Hazardous Liquid Salt Dome Storage Facilities Act, which defines a "salt dome storage facility" as including "any new or existing salt formation or bedded salt formation storage cavern *and* any equipment, facility, or building used or intended for use in the storage

of a hazardous liquid in the salt formation cavern." Tex. Nat. Res.Code Ann. § 211.001(4) (Vernon Supp.1999) (emphasis added). Coastal argues that the Act distinguishes a cavern from any equipment associated with the cavern.[8] We agree. Although any equipment, facility, or building associated with the cavern may be an improvement, the cavern by itself is not.

Based on the summary judgment evidence, we hold that the natural, underground storage caverns are not improvements, and, therefore, are not subject to an appraisal separate from the surface land.

We overrule issues one through six.

We affirm the judgment of the trial court as it pertains to the 1995 tax year.

## Conclusion

The motion for rehearing is granted. We withdraw our opinion and judgment dated June 24, 1999, and issue this opinion in its stead. We affirm the judgment of the trial court as it pertains to the 1994 and 1995 tax years. All other pending motions are overruled as moot.

---

7. Tex. Tax Code Ann. § 1.04(3) states that an "improvement" means:
    (A) a building, structure, fixture, or fence erected on or affixed to land;
    (B) a transportable structure that is designed to be occupied for residential or business purposes, whether or not it is affixed to land, if the owner of the structure owns the land on which it is located, unless the structure is unoccupied and held for sale or normally is located at a particular place only temporarily; or

(C) ... the:
    (i) subdivision of land by plat;
    (ii) installation of water, sewer, or drainage lines; or
    (iii) paving of undeveloped land.

8. Coastal concedes that the wellheads and casings are separately taxable from the cavern. The issue before us is whether the cavity in the substratum of the land is an improvement.