**COASTAL LIQUIDS PARTNERS, L.P., Appellant,**

v.

**MATAGORDA COUNTY APPRAISAL DISTRICT, Appellee.**

No. 13–02–237–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

Aug. 29, 2003.

Rehearing Overruled Nov. 20, 2003.

James A. Porter, El Paso Corporation, Houston, for appellant.

Peter W. Low, Austin, for appellee.

Before Justices YAÑEZ, CASTILLO, and GARZA.

## OPINION

Opinion by Justice YAÑEZ.

Appellant Coastal Liquid Partners, L.P. (Coastal) challenges the trial court's judgment that the appraisal rolls of appellee Matagorda County Appraisal District (MCAD) not be changed. We reverse and remand.

## Background

Coastal leases a natural gas liquids storage facility, known as the Markham Facility, located in Matagorda County. The Markham Facility includes two underground salt dome caverns. Coastal leases the storage space within these two caverns from Texas Brine Corporation (Texas Brine). Texas Brine owns the land in which one cavern is located and leases the other cavern from its owner, Lawrence Petersen.

In order to meet Coastal's storage needs, Texas Brine increased the amount of storage space by leaching additional salt from the two caverns.[1] Coastal is contractually obligated to pay ad valorem taxes applicable to the increased capacity of both caverns, which are listed separately from the surface land on MCAD's appraisal records.

For each of the tax years in question, MCAD, through an engineering firm, appraised the two caverns at a constant value separate from the appraised value of the surface land. From 1995 through 1998, MCAD listed separate appraised values for the caverns under the category of "other." In 1999, the caverns were listed under the "improvement" category. Coastal filed notices of protest with MCAD for these years. The Matagorda County Appraisal Review Board (ARB) held a hearing on Coastal's protests. The ARB upheld MCAD's appraised values. Coastal timely filed the underlying lawsuit.

## Applicable Law

The following are statutes relevant to this property tax case:

**§ 11.01. Real and Tangible Personal Property**

(a) All real ... property that this state has jurisdiction to tax is taxable unless exempt by law.

(b) This state has jurisdiction to tax real property if located in this state.

**§ 25.01. Preparation of Appraisal Records**

(a) [T]he chief appraiser shall prepare appraisal records listing all property that is taxable in the district and stating the appraised value of each.

**§ 25.02. Form and Consent**

(a) The appraisal records shall be in the form prescribed by the comptroller and shall include: ...

  (2) real property;

  (3) separately taxable estates or interests in real property ...; ...

  (5) the appraised value of the land and ... the market value of the land;

  (6) the appraised value of improvements to land; [and]

1. Robert Wayne Sneed, the CFO of Texas United, a company which provides services to its affiliate Texas Brine, agreed to this simplified explanation of the creation of the caverns by Coastal's trial counsel: "So essentially you have a salt dome formation, you drill a well, you brine, you sell brine and then at some point you have a cavern and it's big enough to store something in it. So as a by-product ... you then lease it out for storage space." Sneed further explained that the two caverns in question were not developed exclusively for storage. Instead, "[t]hey were drilled and developed for brine production."

(7) the appraised value of a separately taxable estate or interest in land. TEX. TAX CODE ANN. §§ 11.01(a-b), 25.01(a), 25.02(a)(2, 6–7) (Vernon 2001).

"Real property" is defined as: "land," "an improvement," "a mine or quarry," "a mineral in place," "standing timber," "or an estate or interest"[2] in these enumerated properties. *Id.* at § 1.04(2)(A–F).

"Improvement" is defined as: "a building, structure, fixture, or fence erected on or affixed to land;" "a transportable structure that is designed to be occupied for residential or business purposes, whether or not it is affixed to land, if the owner of the structure owns the land on which it is located;"[3] "the subdivision of land by plat;" "installation of water, sewer, or drainage lines; or . . . paving of undeveloped land." *Id.* at § 1.04(3)(A–C).

## Jurisdiction

"Before we reach the merits of this case, we must first determine whether we have jurisdiction over this appeal." *Ortega v. City Nat'l Bank,* 97 S.W.3d 765, 771 (Tex.App.-Corpus Christi 2003, no pet.) (on rehearing) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 443 (Tex.1993)). MCAD challenges this Court's subject matter jurisdiction over this case. Subject matter jurisdiction concerns the court's "power to hear and determine cases of the general class to which the particular one belongs." *Middleton v. Murff,* 689 S.W.2d 212, 213 (Tex.

1985). "Subject matter jurisdiction requires that the party bringing the suit have standing, that there be a live controversy between the parties, and that the case be justiciable." *State Bar of Tex. v. Gomez,* 891 S.W.2d 243, 245 (Tex.1994). "[S]ubject matter jurisdiction is essential to a court's power to decide a case." *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000).

MCAD contends that Coastal lacks standing to bring this case because Texas Brine protested the value of its property in each of the years involved in this dispute. MCAD cites section 41.413 of the tax code[4] in support of this contention. MCAD's plea to the jurisdiction, making the same argument, was denied by the trial court. "[S]ubject matter jurisdiction is a question of law." *Nueces County v. Hoff,* 105 S.W.3d 208, 211 (Tex.App.-Corpus Christi 2003, no pet.). Accordingly, "[w]e review the trial court's ruling on a plea to the jurisdiction under a de novo standard of review." *Id.* After reviewing the record, we conclude the appraised value of the specific property at issue in this case, the two salt dome storage caverns, was not protested by Texas Brine. As a result, Coastal has standing and this Court has subject matter jurisdiction over this case.

## Analysis

In its first issue, Coastal contends MCAD's listing and appraisal of Coastal's

---

2. This does not include "a mortgage or deed of trust creating a lien on property or an interest securing payment or performance of an obligation." TEX. TAX CODE ANN. § 1.04(2)(F) (Vernon 2001).

3. This does not include structures that are unoccupied and held for sale or structures that are normally located at a particular place only temporarily. TEX. TAX CODE ANN. § 1.04(2)(F) (Vernon 2001).

4. A person leasing real property who is contractually obligated to reimburse the property owner for taxes imposed on the property is entitled to protest before the appraisal review board a determination of the appraised value of the property if the property owner does not file a protest relating to the property. The protest provided by this subsection is limited to a single protest by either the property owner or the lessee. TEX. TAX CODE ANN. § 41.413(b) (Vernon 2001).

salt domes, separately from the land on the surface, constitutes unlawful multiple appraisal of the land. We agree.

This issue was addressed in another salt dome storage facility case. *Harris County Appraisal Dist. v. Coastal Liquids Transp., L.P.*, 7 S.W.3d 183, 189–90 (Tex. App.-Houston [1st Dist.] 1999) (on rehearing), *rev'd on other grounds*, 46 S.W.3d 880 (Tex.2001). In that case, the court held that "natural, underground storage caverns are not improvements, and therefore, are not subject to an appraisal separate from the surface land." *Id.* at 190.

MCAD contends the holding in that case should not be followed.

■ First, MCAD asserts the Houston case simply holds that salt dome storage caverns are not an "improvement" to the land, *see* Tex. Tax Code Ann. §§ 1.04(2)(B), 25.02(a)(6) (Vernon 2001), but does not hold that the caverns must be appraised and taxed as surface "land." *See id.* at §§ 1.04(2)(A), 25.02(a)(2, 5). More importantly, MCAD points out that the Houston case does not address whether such caverns are separately taxable as an estate or interest in land. *See id.* at §§ 1.04(2)(F), 25.02(a)(3, 7).

In support of the argument that the two caverns here can be appraised and taxed as an estate or interest in land separate from the surface land, MCAD offers two cases. *See Parr v. State*, 743 S.W.2d 268, 274 (Tex.App.-San Antonio 1987, writ denied); *Duval County Ranch Co. v. State*, 587 S.W.2d 436, 443–44 (Tex.Civ.App.-San Antonio 1979, writ ref'd n.r.e.).

Both of these cases uphold separate tax assessments for surface estates and mineral estates. *See Parr*, 743 S.W.2d at 274; *Duval County Ranch Co.*, 587 S.W.2d at 443–44. MCAD does not ask us to conclude that Coastal's two underground salt dome storage caverns amount to a mineral estate. Instead, MCAD asks this Court to broaden these holdings to allow separate tax assessments for sub-surface properties in general, not only for mineral estates. However, we decline to extend the law in that direction, as MCAD has provided us with no precedential support for such a reach.

■ Secondly, MCAD asserts the Houston court incorrectly concluded that salt dome storage caverns are "natural." *See Harris County Appraisal Dist.*, 7 S.W.3d at 190. Without being bound by such a characterization, MCAD argues that the Houston court could have determined that the caverns require a separate tax assessment from the surface land as an "improvement." *See* Tex. Tax Code Ann. §§ 1.04(2)(B), 25.02(a)(6) (Vernon 2001). Thus, MCAD argues we would then be in a better position to conclude that the caverns are an "improvement," *see id.*, or that the caverns require a separate tax assessment as an estate or interest in land. *See id.* at §§ 1.04(2)(F), 25.02(a)(3, 7).

We conclude that the Houston court's characterization of salt dome storage caverns as "natural," is inapposite. The Houston court relied on the distinction between salt dome storage caverns and any equipment associated with them, drawn by the natural resources code, to determine that the caverns are not improvements. *Harris County Appraisal Dist.*, 7 S.W.3d at 190. Title 11 (Miscellaneous Uses of Natural Resources), chapter 211 (Hazardous Liquid Salt Dome Storage Facilities) of the natural resources code defines a "salt dome storage facility" as "any new or existing salt formation or bedded salt formation storage cavern and any equipment, facility, or building used or intended for use in the storage of hazardous liquid in the salt formation cavern." Tex. Nat. Res. Code Ann. § 211.001(4) (Vernon 2001). This definition does not persuade us to

conclude that salt dome storage caverns are necessarily natural.

Regardless, we agree with the Houston court that these caverns do not fit the tax code's definition of an "improvement." *See Harris County Appraisal Dist.,* 7 S.W.3d at 190; TEX. TAX CODE ANN. § 1.04(2)(B) (Vernon 2001). Furthermore, for the reasons set forth earlier, we reiterate our decision not to hold that these caverns require a separate tax assessment from the surface land as an estate or interest in land. *See id.* at § 1.04(2)(F).

In its second issue, Coastal contends there is no evidence or insufficient evidence to support the findings and conclusions of the trial court. We need not address this point, as the trial court's findings and conclusions were based on the assumption that the salt dome storage caverns could receive a separate tax assessment from the surface land.

In its third issue, Coastal contends it is entitled to recover reasonable attorney's fees. "The tax code provides that the prevailing property owner may be awarded attorney's fees in certain appeals of appraisals to the district court." *Tex–Air Helicopters, Inc. v. Appraisal Review Bd. of Galveston County,* 940 S.W.2d 299, 303 (Tex.App.-Houston [14th Dist.] 1997, writ granted) (citing TEX. TAX CODE ANN. § 42.29), *aff'd,* 970 S.W.2d 530 (Tex.1998). Coastal "was not a prevailing property owner in the trial court, and the trial court had no reason to address the attorney's fees issue." *See id.* at 304. Thus, we will not address Coastal's right to attorney's fees "until the trial court has had the opportunity to properly determine whether to grant them." *See id.*

## Conclusion

We hold that Coastal's two salt dome storage caverns "are not subject to an appraisal separate from the surface land."

*See Harris County Appraisal Dist.,* 7 S.W.3d at 190. As such, we sustain Coastal's first issue. The judgment of the trial court is REVERSED. The appraisal rolls must be changed and this case is REMANDED to the trial court with instructions to proceed in accordance with this opinion.