IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF 
TEXAS
 
════════════
No. 03-1200
════════════
 
Matagorda County Appraisal 
District, Petitioner,
 
v.
 
Coastal Liquids Partners, 
L.P., Respondent
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the Thirteenth District 
of Texas
════════════════════════════════════════════════════
 
 
Argued 
December 1, 
2004
 
 
Justice Brister delivered the opinion 
of the Court.
 
We must decide whether salt dome caverns created to store 
liquid hydrocarbons may be appraised and taxed separately from the surface land 
above them. The question has been here before, but we did not reach it in 
Coastal Liquids Transportation, L.P. v. Harris County Appraisal District 
because the taxpayer lacked capacity.[1] 
Predictably, given the millions of tax dollars involved,[2] 
the question has surfaced again.
In this case, 
the taxpayer Coastal Liquids Partners, L.P. challenged the Matagorda County 
Appraisal District's valuation of the Hiltpold #1 and 
Hudson #3 caverns at almost $2 
million in value for the tax years 1996 through 1999. The trial court granted 
judgment for the District, but the court of appeals reversed, finding the 
caverns could not be appraised separately from the surface above them. We 
reverse, and remand to the court of appeals.
I
We first must 
address the District’s jurisdictional challenge.
Since 1995, a 
person leasing property who is contractually obligated to reimburse the owner 
for ad valorem taxes can protest an appraisal in the 
owner’s place.[3] 
It is undisputed that Coastal’s lease of these caverns 
from Texas Brine Corporation contains just such an obligation.
But the 
statute allows only one protest; the owner and the lessor cannot both do so.[4] 
The District argues that the courts have no jurisdiction of Coastal’s claims because Texas Brine filed a protest 
concerning fourteen salt dome facilities, including the two it leased to 
Coastal. Texas Brine signed agreements with the District settling its 
protest.
First, we 
disagree that this is a jurisdictional question. It is true a taxpayer’s failure 
to pursue an appraisal review board proceeding deprives the courts of 
jurisdiction to decide most matters relating to ad valorem taxes.[5] 
But there is no question there was such a proceeding here; the only question is 
whether there was more than one. 
In the first 
instance, it is up to a local appraisal board to decide whether there has been 
more than one protest relating to the same property.[6] 
While a board has no authority to change a settlement reached by a taxpayer and 
the chief appraiser,[7] 
it certainly has the authority to take note of what property was included. By 
entering an order assessing the appraised value of the two caverns here in Coastal’s proceeding, the board impliedly rejected the 
District’s claim.[8]
Appeal of an 
appraisal board ruling is by trial de novo.[9] 
When Coastal appealed the board’s appraisal to the trial court, the District 
filed a plea to the jurisdiction. In response, Coastal introduced a tape 
transcript from the board hearing and testimony from some of the participants. 
While the transcript is imperfect due to the informal nature mandated for such 
hearings,[10] 
it supports Coastal’s argument that Texas Brine orally 
limited its own protest and subsequent settlement to those for which it had to 
pay the taxes. A letter from Coastal’s counsel to 
Texas Brine also supports this conclusion.
            
Treating the District’s jurisdictional challenge as one attacking the 
legal sufficiency of the evidence to support the trial court’s judgment,[11] 
we hold that the District failed to prove as a matter of law that there were 
duplicate protests concerning the same property.
II
According to 
the transcript of the appraisal board hearing, Coastal initially took the 
position that storage caverns like those here are not subject to ad valorem taxes at all. In this appeal, it takes the more 
moderate position that the caverns may be taxed, but only as “land” and as a 
part of the surface realty to which they are attached. Otherwise, Coastal 
argues, the District can improperly tax aspects of 
property that are inseparable, and perhaps double tax them. We address each 
argument separately. 
A
The Property 
Tax Code defines “real property” as: (A) land; (B) an improvement; (C) a mine or 
quarry; (D) a mineral in place; (E) standing timber; or (F) an estate or 
interest in one of the above.[12] 
In preparing its records, the Code requires appraisal districts to list 
separately (among other things) the appraised value of land, improvements, and 
separately taxable estates or interests.[13] 
Obviously, a single tract may include several of these aspects of realty, or 
perhaps even all. 
It has long 
been the case that at least some of these aspects of real property can be taxed 
separately even though all are part of the same surface tract. Thus, for 
example, in 1923 we held that an oil and gas lease was not personalty but an interest in realty that was separately 
taxable from the surface estate.[14] 
This rule does not depend on whether each aspect is separately owned, as 
identical properties cannot be taxed differently depending on whether, for 
example, a mineral interest has been legally severed.[15]
But in 
Gifford‑Hill & Co. v. Wise County Appraisal District, we held that in 
some circumstances subsurface limestone cannot be appraised separately from the 
land immediately above it.[16] 
Coastal urges us to make a similar ruling here. We agree that Gifford-Hill 
is dispositive, but not in the way Coastal 
suggests.
The Court’s 
concern in Gifford‑Hill was that a blanket rule taxing limestone 
separately “would subject thousands of unsuspecting farmers and ranchers to 
increased tax liability and frustrate the Constitution’s intent ‘[t]o promote 
the preservation of open space land . . . devoted to farm or ranch purposes.’”[17] 
But we did not hold that subterranean resources could never be appraised 
separately from the surface; to the contrary, we remanded for the trial court to 
determine which part of the limestone in that case could be separately 
appraised.[18]
Instead, 
Gifford‑Hill recognized a distinction between limestone currently under 
production as part of a quarry, and lands containing limestone where extraction 
was merely a future possibility:
 
We agree 
that the term “quarry” means more than merely the excavation existing during the 
extraction of a source of supply or left after a source of supply has been 
extracted. However, the opening of a quarry on a tract of land does not 
automatically subject the entire tract to ad valorem 
taxation as a quarry.  We recognize 
that a deposit of limestone may extend beyond the area from which limestone is 
presently being produced. Some adjacent land may be in the path of the quarry 
and its limestone deposit may reasonably be deemed to be producing and thus 
considered as part of the quarry. Also, if any phase of the operation of the 
quarry is conducted on surface land, such land may constitute part of the 
producing quarry. However, other land surrounding a quarry may not be included 
as part of the existing quarry even though the land's value increases because 
the extent of the limestone is known with some certainty. The value of the land 
containing non‑producing limestone should be determined by applying a per acre 
value to the number of acres covered by the interest rather than by an intrinsic 
price based upon the market price of the limestone per ton.[19]
 
We remanded 
for the trial court to value separately the limestone that was part of a 
producing quarry (appraised at $6,000 per acre) and the limestone that was not 
(taxed at the open-space value of $57 per acre).[20]
The 
reasoning in that case requires a different result under the facts in this one. 
The storage caverns here were not awaiting future development; they were and had 
been in active commercial use, separate and apart from whatever uses were taking 
place on the surface above. Evidence at trial indicated Coastal pays almost 
$500,000 annually to rent and use the caverns, and contractually agreed to pay 
any ad valorem taxes associated with them. Assessing 
these caverns separately from the surface does not burden any unsuspecting 
farmers or ranchers with tax liability for an asset unlikely to be 
exploited.
Coastal 
argues that separately assessing the storage caverns here could lead to separate 
assessment of a house and its scenic view or access to a beach. We agree that 
many aspects of property cannot be separately assessed from the value of the 
surface land, and that when the latter reflects the former a separate assessment 
would tax them twice. 
But 
it is difficult to state a precise rule about what property can be separately 
assessed because of the multitude of possible circumstances and the hundreds of 
Tax Code provisions that may govern them. Perhaps the most that can be said is 
that each property should be appraised “based upon the individual 
characteristics that affect the property's market value.”[21] 
While the constitution requires that “[t]axation shall 
be equal and uniform,”[22] 
that mandate may render different appraisal methods appropriate in different 
circumstances. Because the circumstances here differ from those in 
Gifford-Hill, we apply the same reasoning but reach a different 
result.
B
Coastal 
also argues that the District’s listing of the storage caverns as “Improvements” 
for 1999 and as “Other” for previous tax years must be presumed to be double 
taxation. The argument appears to be that (1) the Property Tax Code requires 
property to be appraised in one of six mutually exclusive categories, (2) the 
only category applicable to these storage caverns is “land,” and thus (3) the 
additional categories used here must be double taxation as the caverns were 
already included in the “land” assessment. Though the trial court sitting as 
trier-of-fact found no evidence of any multiple or 
overlapping appraisal, Coastal insists that the statutory requirements mean that 
“no evidence of overlap is necessary.”
We 
disagree with each of these propositions. First, the Property Tax Code does not 
expressly require real property to be listed in the six categories used to 
define it. To the contrary, the Code explicitly requires separate records of the 
appraised value of land, improvements, and separate interests, but not of mines, 
minerals, or timber.[23] 

Further, 
some of the categories used to define real property clearly overlap.[24] 
And in some cases, it is difficult to draw the line between these categories, as 
we struggled to do between “mineral in place” and “quarry” in 
Gifford-Hill.[25]
It 
is true that in the latter opinion we referred somewhat skeptically to the 
appraisal district’s use of “a new category of taxable property, previously 
unknown in the law, entitled ‘rock reserve.’”[26] 
But we certainly did not conclude that such property should escape taxation 
entirely because it was unclear which of the Code’s appellations should apply. 
Indeed, such an interpretation would raise difficult constitutional questions.[27]
We 
agree with Coastal that the statutory categories are important, and that 
appraisal districts generally should not abandon them in favor of creative 
alternatives. But the Code primarily requires that property “be described in the 
appraisal records with sufficient certainty to identify it.”[28] 
“Ordinarily a description is sufficient when the property sought to be assessed 
may be identified from the description given.”[29] 
So long as the District’s records gave Coastal notice of what property was 
included in each tax account (and thus some assurance that it was not included 
twice), including these caverns under an incorrect category would not exempt 
them from taxation.
Second, 
we disagree that the only category applicable to these caverns is “land.” The 
Property Tax Code defines “improvement” to include “a building, structure, 
fixture, or fence erected on or affixed to land.”[30] 
While the undisturbed limestone involved in Gifford-Hill could not be 
characterized as an “improvement,” the caverns here can.
Generally, 
a “structure” is “[a]ny construction, production, or 
piece of work artificially built up or composed of parts purposefully joined 
together.”[31] 
Salt-dome storage caverns may exist naturally,[32] 
but the ones here were clearly man-made. There was evidence that more than $1 
million was spent to leach salt from them, creating storage space for about 6 
million barrels of liquid hydrocarbons. Though the parties disputed whether 
these costs should be attributed to salt extraction or cavern creation (as the 
one accomplishes the other), the annual rent of almost $500,000 shows that the 
resulting “structure” had substantial value.
In 
the valuation case that we reversed for lack of capacity, the First Court of 
Appeals held that a storage cavern could not be an “improvement” because the 
Natural Resources Code defines a “salt dome storage facility” as both the 
formation itself and buildings and equipment used to operate it.[33] 
In the first place, this imports a definition from a different statute adopted 
for different purposes. But even if that were appropriate, by defining the 
facility to include both the cavern and associated fixtures (Coastal concedes 
the latter may be taxed as an “improvement”[34]), 
the implication is that both should be treated the same. At least for purposes 
of the Property Tax Code, the caverns here could be categorized as improvements. 

Finally, 
we disagree with the proposition that cases asserting double taxation should be 
determined by presumption rather than proof. In an appeal from an appraisal 
board determination, “[t]he district court shall try all issues of fact and law 
raised by the pleadings in the manner applicable to civil suits generally.”[35] 
While the appraisal district “has the burden of establishing the value of the 
property by a preponderance of the evidence,”[36] 
nothing in the trial of civil suits generally suggests that we should ignore 
evidence about what property was or was not included.[37]
*    *    *
Unquestionably, 
a huge storage facility constructed aboveground to hold millions of barrels of 
hydrocarbons would be taxable as an “improvement.” We find no logical reason to 
assess such facilities differently when it is more practical to build them 
below.
Accordingly, 
we reverse the court of appeals’ judgment that the caverns here could not be 
separately appraised. We remand to the court of appeals to consider Coastal’s remaining issues.[38]
 
____________________________
Scott 
Brister
Justice
 
 
OPINION 
DELIVERED: May 27, 
2005




[1] See 46 S.W.3d 880, 885-86 
(Tex. 2001).

[2] Testimony at trial indicated that 
Texas has more than 500 of such 
facilities.

[3] Tex. Tax Code ' 41.413(b); see also id. ' 42.015(a) (“A person leasing property who is 
contractually obligated to reimburse the property owner for taxes imposed on the 
property is entitled to appeal an order of the appraisal review board . . . 
.”).

[4] Id. ' 41.413(b).

[5] Tex. Tax Code ' 42.09 (providing that tax protest procedures are 
exclusive means of asserting tax claims except defenses of nonownership or that property is in a different 
jurisdiction); Robstown Indep. Sch. Dist. v. Anderson, 706 S.W.2d 952, 953 (Tex. 1986) 
(per curiam) (holding that failure to file protest to 
assessments after Tax Code’s January 1, 1982 effective date waives complaint). While we held twenty 
years ago that compliance with the statutory requirements for appeal from an 
appraisal review is jurisdictional, Appraisal Review Bd. v. Int’l Church of 
Foursquare Gospel, 719 S.W.2d 160, 160 (Tex. 1986) (per curiam), we have yet to address whether that holding 
survives Dubai Petroleum Co. v. Kazi, 12 S.W.3d 
71, 76-77 (Tex. 2000) (holding that compliance with statutory requirements for 
asserting wrongful death claim was case-determinative but not jurisdictional 
question).

[6] Tex. Tax Code ' 41.45(a) (“If more than one protest is filed relating 
to the same property, the appraisal review board shall schedule a single hearing 
on all timely filed protests relating to the property.”); see also id. 
' 41.01(a)(6) (providing that 
appraisal review board shall “make any other determination that this title 
specifically authorizes or requires”).

[7] Id. ' 41.01(b) (providing that board may not review or reject 
agreements between property owners and chief appraiser pending an appeal to the 
board).

[8] Id. ' 41.47(a) (“The appraisal review board hearing a protest 
shall determine the protest and make its decision by written 
order.”).

[9] Id. ' 42.23(a) (“Review is by trial de novo. The district 
court shall try all issues of fact and law raised by the pleadings in the manner 
applicable to civil suits generally.”).

[10] The Property Tax Code provides that “[h]earing procedures to the greatest extent practicable shall 
be informal.” Id. ' 41.66(b). While witnesses must be 
sworn, id. ' 41.67(a), they may appear by affidavit. 
Id. ' 41.45(b).

[11] See Dubai, 12 S.W.3d at 76. 


[12] Tex. Tax Code 
' 1.04(2).

[13] Id. ' 25.02(a). 

[14] Stephens 
County v. Mid‑Kansas Oil & Gas 
Co., 254 S.W. 290, 292, 294-95 
(Tex. 1923).

[15] State v. Federal Land Bank of 
Houston, 329 S.W.2d 847, 849 
(Tex. 1959).

[16] 827 S.W.2d 811, 814, 817 
(Tex. 1991).

[17] 827 S.W.2d at 817 n.8, 
822-23.

[18] Id. at 817.

[19] Id. at 815-16 (citations 
omitted). See also 
Tex. Tax Code ' 23.17 (“An interest in a mineral that may be removed by 
surface mining or quarrying from a deposit and that is not being produced is 
appraised at the price for which the interest would sell while the mineral is in 
place and not being produced.”).

[20] 827 S.W.2d at 
825.

[21] See Tex. Tax Code ' 23.01 (“The same or similar appraisal methods and 
techniques shall be used in appraising the same or similar kinds of property. 
However, each property shall be appraised based upon the individual 
characteristics that affect the property's market 
value.”).

[22] Tex. Const. 
art. VIII, 
'1(a).

[23] Compare Tex. Tax Code 
' 1.04(2), with 
id. ' 25.02(a). 


[24] As a fee-simple interest is clearly 
“an estate or interest . . . in property,” id. ' 1.04(2)(F), this last category 
necessarily overlaps to some degree with all the former 
ones.

[25] 827 S.W.2d at 
816.

[26] Id. at 813.

[27] Tex. Const. 
art. VIII, 
'1(a) 
(“Taxation shall be equal and uniform.”); id. ' 1(b) (“All real property and tangible personal property 
in this State, unless exempt as required or permitted by this Constitution . . . 
shall be taxed in proportion to its value, which shall be ascertained as may be 
provided by law.”).

[28] Tex. Tax Code 
' 25.03(a).

[29] Electra Indep. Sch. Dist. v. W. T. Waggoner 
Estate, 168 S.W.2d 645, 650 
(Tex. 1943).

[30] Tex. Tax Code ' 1.04(3)(A).

[31] See Black’s Law Dictionary 1464 (8th ed. 
2004).

[32] Amicus Chambers County Appraisal District discloses in 
its brief that it taxes man-made storage caverns as “improvements” but does not 
tax natural ones. As only the former are before us, we express no opinion as to 
the latter.

[33] Harris County Appraisal Dist. v. Coastal Liquids 
Transp., L.P., 7 S.W.3d 183, 190 (Tex. App.CHouston [1st Dist.] 1999), rev’d, 46 S.W.3d 880 
(Tex. 2001); see Tex. 
Nat. 
Res. Code ' 211.001(4) (“‘Salt dome storage facility’ includes any 
new or existing salt formation or bedded salt formation storage cavern and any 
equipment, facility, or building used or intended for use in the storage of a 
hazardous liquid in the salt formation cavern.”).

[34] See Coastal Liquids Transp., 7 S.W.3d at 190 
n.8.

[35] Tex. Tax Code 
' 42.23(a).

[36] Id. ' 41.43(a).

[37] See, e.g., 
El Paso Cent. Appraisal Dist. v. Montrose 
Partners, 754 S.W.2d 797, 799 (Tex.App.CEl Paso 1988, writ denied) (holding that appraisal of 
improvements that mistakenly included swimming pool but excluded building was 
not merely incorrect valuation, and could be 
amended).

[38] The court of appeals did not reach Coastal’s complaints regarding the factual and legal 
sufficiency of the evidence to support the trial court’s valuation, or its claim 
for attorney’s fees.